AND

## *THE CORRECTION OF ERRORS*

OF THE

### STATE OF NEW-YORK,

IN FEBRUARY, MARCH, AND APRIL, 1818.

---

DAVID DUNHAM, *Appellant*,
against
ANTHONY DEY, *Respondent.*

THIS was an appeal from the Court of Chancery. The respondent, in his bill in the court below, stated that *Matthias* and *William Ward* were copartners in the business of booksellers, before, on, and after the 27th of *January*, 1810, on which day, *M. Ward* was seised of fifty lots of ground in the ninth ward of the city of *New-York*, containing each 25 feet by 100. That *M. Ward* gave to the appellant a deed of conveyance for these lots, which was absolute on the face of it, but was intended only as a security, or for some temporary purpose understood between them, and was never registered as a mortgage. That on the 27th of *July*, 1810, a

A deed, purporting to be an absolute conveyance of land, but, in fact, intended as a security for a debt, is a mortgage.

A party cannot obtain relief in equity, against a mortgage given for a usurious debt, without offering to redeem, on payment of the principal and legal interest.

Where a mortgage is given as security for the payment of promissory notes, which are from time to time renewed, the renewal is not to be deemed an extinguishment of the original debt, so as to affect the continuance of the security.

A person who takes a conveyance of land, with notice of a prior unregistered mortgage, is not a *bona fide* purchaser who can gain a priority by having his deed first recorded.

Where a person conveyed all his property, real and personal, without any particular description in the body of the deed, but in a schedule annexed, certain lots, previously mortgaged by the grantor to *D. D.* were described as "lots of ground in *Stuart* street, the title to which is in *D. D.*" it was held that this was notice to the grantee of the prior mortgage to *D. D.* which had never been recorded, and that therefore the grantee could not, by having his deed first recorded, obtain a priority.

IN ERROR.
........
ALBANY,
Feb. 1818.

DUNHAM
v.
DEY.

writing, bearing date on that day, was made and executed under the hands and seals of *M. Ward* and the appellant, reciting that *M. & W. Ward* were indebted to the appellant in the sum of 10,000 dollars, on three promissory notes, payable six months after date, and dated respectively the 24th, 25th, and 26th of *July*, 1810; the conveyance from *M. Ward* to the appellant, that *M. & W. Ward* had deposited with the appellant certain notes of *R. Bache & Co.* and declaring that if the notes of *M. & W. Ward* should be regularly paid, the conveyance and the notes of *R. B. & Co.* should be given up, otherwise they were to remain as security, and the appellant might sell the lots, and collect the money on *B. & Co.'s* notes : but this writing was never registered. That on the 17th and 25th of *June*, 1811, *M. & W. Ward* made and delivered to the appellant their other notes, each for 3,333 dollars and 33 cents, and which were received by his agent, *M. B. Edgar*, on account of the notes given by them in *July*, 1810, but the latter notes were still retained by the appellant: that at the same time they paid the appellant the interest due thereon, and in addition thereto, a large sum by way of usury on the substituted notes, which last, when they fell due, were taken up by the respondent. The bill further stated, that *M. & W. Ward*, by indenture of the 11th of *May*, 1812, conveyed and assigned to the respondent, all their estate, real and personal, (except wearing apparel, household furniture, and certain specified debts,) in trust for the benefit of their creditors, and a part of the property so conveyed, was the right and interest of *M. Ward*, in the fifty lots contained in the deed to the appellant ; and that afterwards, by a deed of the 16th of *November*, 1812, *M. Ward* executed another conveyance of those lots, upon the same trusts, for the more clear description of the said lots, and to confirm the title of the respondent therein : and that on the 19th of *November*, 1812, the respondent gave a written notice of the conveyance to the appellant, requesting him to give up his deed to be cancelled, to release his right in the land, and to give up the three promissory notes of *M. & W. Ward* to be cancelled. The bill further stated, that between the 27th of *January*, 1810, and the day of the date of the assignment from *M. & W.*

*Ward* to the respondent, *M. & W. Ward* had various deal-
ings with the appellant, by exchanging notes, upon which
transactions the appellant, taking advantage of their neces-
sities, extorted from them, under the name of commissions, or
some other name, but in fact for usury and unlawful interest,
contrary to the statute, 2,000 dollars or upwards, for which
the appellant became and was accountable to *M. & W. Ward*,
before and at the time they made the assignment of their
estates in trust to the respondent, and for which the appel-
lant, in consequence of that assignment, became accountable
to the respondent. The bill prayed that the appellant might
deliver up the said deed of the 27th of *January*, 1810, and
release to the respondent all pretence of right in the said
fifty lots, and account with the respondent, for what the ap-
pellant had received for usury or unlawful interest from the
said *M. & W. Ward*, as stated in the bill.

The appellant, in his answer in the court below, denied
that the deed from *M. Ward*, to him, was made on any
usurious or illegal contract, or that the purposes of it were
fulfilled on the 27th of *July*, 1810, or were yet fulfilled.
The answer stated, that on the 27th of *January*, 1810, *M.
& W. Ward*, applied to the appellant to advance them three
promissory notes for 10,000 dollars, payable six months af-
ter date, which he agreed to do, and accordingly advanced
them three notes, each for an equal portion of that sum,
dated the 24th, 25th, and 26th of *January*, 1810, payable
six months after date respectively, whereupon *M. Ward*
conveyed to the appellant, the before-mentioned fifty lots,
by a deed of that date, which was absolute in its terms, but
was intended only as a security for the notes so advanced ;
that on the 25th of *July*, 1810, *M. & W. Ward* applied to
the appellant to renew the notes, which he did, by giving
their notes for the same sums, dated the 26th, 27th, and 28th
of *July*, payable in six months ; and thereupon they gave the
appellant their three notes, two for 3000 dollars each, and
one for 4000 dollars, dated the 24th, 25th, and 26th of *July*,
payable six months after date, left the deed in his hands,
and also deposited with him, three notes of *R. Bache, & Co.*
of which two were for 1408 dollars 42 cents each, and the
other for 1408 dollars, 41 cents ; that the difference in the

IN ERROR.
. . . . . . .
ALBANY,
Feb. 1818.

DUNHAM
v.
DEY.

dates of the notes given by the appellant, and those taken from *M. & W. Ward*, in exchange, was to enable the appellant to collect the latter notes before his fell due, or to sell the fifty lots to raise the money; and that *M. & W. Ward* took up the notes which they had given to the appellant in *January*, and which he had lodged in the bank for collection; but that the notes given in *July*, being lodged for collection in the bank, were left unpaid, the *Wards* having previously failed, and were taken out of the bank by the appellant, and retained by him, with their consent. The appellant admitted that the deed of the 27th of *January*, 1810, was never registered as a mortgage, but that it was recorded as a deed, on the day it bears date; and also, that the defeasance had never been recorded. He stated, that after the notes of *M. & W. Ward*, given in *July*, 1810, had become payable, *M. Ward* proposed to the appellant, to raise for him, on his notes, 10,000 dollars, to put him in cash to that amount, and prevent a sale of the lots; in consequence of which, *M. & W. Ward* gave to him three notes, one dated 25th of *May*, 1811, for 3333 dollars 33 cents, at sixty days, for which they received from him his note for the same amount, dated the 28th of *May*, at sixty days; another note dated 12th of *June*, 1811, at ninety days, for 3333 dollars 33 cents, for which they received his note for the same amount, dated the 15th of *June*, 1811; and a third note for 3333 dollars 33 cents, dated the 24th of *June*, at thirty days, which he received to meet his note given to them payable at five months from the 25th of *February*, then last; on which notes, money was raised by *M. Ward*, who gave the respondent the proceeds, but he denied that he received from them any notes of the 17th and 25th of *June*, as mentioned in the bill. He also alleged, that at the time the proposition to raise money on the respondent's notes was made, *M. Ward*, agreed that the notes given in *July*, 1810, should be retained by the respondent, until the lots should be sold, or the loan or debt discharged, because they corresponded with the notes described in the defeasance, and the deed and defeasance were also to remain in force till the debt was paid; but he denied that the notes of the 25th of *May*, 12th and 24th of *June*, 1811, were

given by the *Wards*, or received by the respondent, in lieu IN ERROR.
. . . . . . .
ALBANY,
Feb. 1818.
DUNHAM
v.
DEY. of the notes of *July*, 1810, on which latter notes they paid all the interest that had accrued, and he admitted that the notes given by *M. & W. Ward*, in *May* and *June*, 1811, had been paid. He admitted that he had received from them commissions, varying from one half, to two and a half per cent, but denied all extortion and usury.

The receipt before alluded to, signed by *M. B. Edgar*, was in the following terms :

"*New-York, June* 17th, 1811, Received from *M. & W. Ward*, their two notes, viz. 25th *May*, sixty days, thirty three hundred and thirty three $\frac{33}{100}$ dollars. 12 *June*, 90 days, same amount, being on account of their three notes, 24, 25, 26 *July*, 1810, at 6 ms. for 10,000.

*D. Dunham*, p. *M. B. Edgar*."

On the back of the receipt there was this endorsement :
"25 *June*, received note 30 days, $ 3333 33.

*M. B. Edgar*."

The assignment of the 11th *May*, 1812, from *M. & W. Ward*, to the respondent, contained a grant of " all the estate and property of the said *Matthias Ward* and *William Ward*, either joint or several, and both real and personal, and whether in possession, reversion or remainder, (the wearing apparel and household furniture of the parties respectively excepted) and the several debts and demands due to the said *Matthias Ward* and *William Ward*, either jointly or severally, whether mentioned and described in the schedule hereto annexed, marked B, or otherwise, and more particularly the stock in trade, now in the house called the *City Hotel*, in the said City of *New-York*, or the ware-room in the rear of the same. To have and to hold, &c." In the schedule referred to, there was the following clause : " Lots of ground in Stuart street, the title to which is in name of *David Dunham*, given as collateral security to pay certain notes." The deed of conveyance of those lots, of the 16th *November*, 1812, from *M. Ward*, to the respondent, referred to the description of them as given in the schedule to the assignment.

The testimony in the court below, taken on the part of the respondent, fully established the fact, that a commission

IN ERROR.
......
ALBANY,
Feb. 1818.

DUNHAM
v.
DEY.

of two and a half per cent. had been received by *Dunham* from the *Wards*, on the several exchanges of notes before mentioned. The transaction, however, was not regarded by the Chancellor as usurious, who did not notice it in his decree, but ordered a conveyance of the lots in question to be executed by the appellant to the respondent, and that the appellant pay the costs of suit. For the decree of the Chancellor, and the reasons on which it was founded, see 2 *Johns. Ch. Rep.* 188—196.

*Feb. 2—6th.*   *T. A. Emmet*, for the appellant, contended, that the question of usury could not be discussed on the present appeal. If the respondent considered the decree of the Chancellor erroneous in that respect, he might have entered a cross appeal, and thus brought the subject before the court; but not having done so, all discussion must be confined to the other points on which it has been sought to invalidate the deed from *Ward* to the appellant.

The deed of the 27th of *January*, 1810, was an absolute conveyance, and vested an absolute title in the appellant; it was not until the following *July*, that a defeasance was executed, and consequently, in all the intermediate time, it could have been recorded no otherwise than as a deed. Had the execution of the conveyance and the defeasance been simultaneous, they would have been, in fact, but one and the same disposition of the property, and no more than equivalent to a single instrument, containing both a grant and the condition on which the estate of the grantee was to be devested, and the transaction could be regarded no otherwise than as a mortgage. (*Powell on Mort.* 6, 7.) But where the defeasance, as in this case, is subsequently executed, it cannot vary the nature of the original deed, as between the parties themselves. It is an agreement or trust which may be enforced; but as to third persons, the deed continued an absolute conveyance; nor does it, as the Chancellor supposed, relate back to the original deed; the law gives it no such relation, (*Cotterell* v. *Purchase, Cases temp. Talb.* 61.) and the parties themselves never intended it to be retrospective. The instrument, on the face of it, was only prospective; the appellant might have sold and conveyed an absolute and

irredeemable estate, and it was in the contemplation of the

parties that he should have that power. There was no actual possession of the lots, and the law will, of course, deem the possession to be in him who has title.

The respondent was not a *bona fide* purchaser. Indeed it no where appears, except in the schedule of the assignment from *M. & W. Ward* to him, that he was a creditor; and that assignment and schedule are not evidence against the appellant; but if he were a purchaser for valuable consideration, he is not, therefore, necessarily, a *bona fide* purchaser. As a trustee for the payment of debts, he is not a purchaser for valuable consideration; he paid nothing. The statute means a purchaser, in the common and vulgar sense, one who lays out his money; and admitting that the deed and defeasance, may be coupled and make parts of one transaction, as he was affected with notice, he was not a *bona fide* purchaser. The schedule to the deed of assignment itself, was full intimation of the appellant's claim; for it states expressly, that the title to the lots in question was in the name of the appellant, and that it was given to him as collateral security to pay certain notes.

Where a person takes a conveyance of the legal estate, with notice of a prior right, he is guilty of a fraud, (*Le Neve* v. *Le Neve*, 3 *Atk.* 646. S. C. *Ambl.* 436. 1 *Ves.* 64. *Burr. Rep.* 474, *per Lord Mansfield. Jackson, d. Humphrey and others,* v. *Given and others,* 8 *Johns. Rep.* 137. *Jackson, d. Livingston and others,* v. *Neely,* 10 *Johns. Rep.* 374.) and cannot gain a priority by having his deed recorded. It is true, that Lord *Hardwicke,* in *Hine* v. *Dodd,* (2 *Atk.* 276.) says, that " suspicion of notice, though a strong suspicion, is not sufficient to justify the court in breaking in upon an act of parliament;" but, he previously admits, " that apparent fraud, or clear and undoubted notice, would be a proper ground for relief." The Master of the Rolls, therefore, in *Jolland* v. *Stainbridge,* (3 *Ves.* 478.) was certainly not warranted in asserting, that Lord *Hardwicke,* in *Hine* v. *Dodd,* said, that " nothing short of actual fraud will do." Besides, in *Hine* v. *Dodd,* the defendant denied notice, and there was but a single witness to fix it upon him : this alone was a sufficient ground for dismissing

IN ERROR.
.......
ALBANY,
Feb. 1818.

DUNHAM
v.
DEY.

the bill, and it was unnecessary to go into any further inquiry. *Newland*, in his Treatise on Contracts, p. 510, observes, that " Lord *Hardwicke* did not mean to say, that it was necessary to make out a case of actual fraud, as distinguished from the fraud which equity imports, to a person purchasing with notice of a prior title, and endeavouring to defeat it by obtaining the legal estate, in order to admit evidence in the case alluded to. Lord *Hardwicke* plainly distinguishes between one species of fraud and the other, and admits, that in either case relief would be given." " The intention of the act," says Mr. *Sugden*, (*Law of Vendors and Purchasers*, 471.) " was to secure subsequent purchasers and mortgagors against prior *secret conveyances and fraudulent incumbrances ;* and, therefore, where a person has notice of a prior conveyance, it is not a secret conveyance by which he can be prejudiced ; for, he can be in no danger, where he knows of another incumbrance ; because he might then have stopped his hand from proceeding, and, therefore, is not a person whom the statutes meant to relieve." If by *suspicion of notice,* be meant, what is sufficient to put the party upon inquiry, that, Lord *Hardwicke,* has himself said, is good notice in equity ; (*Smith* v. *Low,* 1 *Atk.* 490.) and, in *Le Neve* v. *Le Neve,* (3 *Atk.* 646.) he proceeds, throughout, on the ground, that the taking a conveyance with notice of a prior right, makes a person a *mala fide* purchaser, and he decides, that notice to the agent was sufficient to affect the principal. This case, certainly, went far beyond the narrow rule laid down in *Hine* v. *Dodd.* If a man purchases the fee in land under a lease, and is informed of the existence of the lease, is there not sufficient to put him upon inquiry, and must he not be bound by all the stipulations and covenants which it contains ? (*Taylor* v. *Stibbert,* 2 *Ves. jun.* 437.) The respondent, in the case before the court, was apprised of the existence of the appellant's deed. He had sufficient to put him upon inquiry, and he cannot protect himself by alleging the want of that knowledge, which it was his duty to acquire.

The facts of the case show, that the notes given by the *Wards,* in *July,* 1810, have always remained outstanding and unsatisfied. Such is the allegation of the answer, and

there is nothing to repel it, but an inference drawn from an obscure expression in *Edgar's* receipt. If the respondent's objections to the deed of the 27th of *January*, 1810, are well founded, he has an adequate remedy at law ; and the decree of the Chancellor was incorrect, in ordering the deed to be delivered up to be cancelled, for it contains covenants which ought not to be released, and which no insolvency would sweep away.

IN ERROR.
........
ALBANY,
Feb. 1818.

DUNHAM
v.
DEY.

*Riggs* and *S. Jones, Jun. contra.* The question of usury is open for discussion in this court, which, on an appeal from Chancery, will hear and decide on the whole merits of the case, and finally settle all the matters in controversy between the parties. (*Le Guen* v. *Gouverneur and Kemble*, 1 *Johns. Cas.* 436. *M'Vickar and others* v. *Wolcott and others*, 4 *Johns. Rep.* 510.) It is the settled practice of the Court of Appeals in *Virginia*, to correct an error to the injury of the respondent, although he has not appealed from it. (*Day* v. *Murdock*, 1 *Munford*, 460.) A similar practice is adopted in the Court of Chancery, where, on a rehearing, although the party petitioning is restricted to the specific objects of his petition, yet the whole case is open to his adversary.

The notes, for the securing the payment of which the mortgage was given, were usurious: or, if not usurious, there was extortion, and an undue advantage taken of the situation and necessities of the *Wards.* The amount of interest received, or stipulated to be received, upon the various transactions between them and the appellant, exceeds the legal rate of seven per cent., and it is in vain to attempt to shelter it under the name of commissions. A creditor is not allowed to make it a condition of the loan, that he should receive a compensation for his services in procuring the money, for it tends, most manifestly, as was observed by the Chancellor in another case, to oppression and usury, if it is not usury in itself. (*Hine* v. *Handy*, 1 *Johns. Ch. Rep.* 6.) And in a case between these same parties, the Supreme Court determined, that the taking two and a half per cent., in the exchange of the appellant's notes, with the notes of the *Wards*, under the name of commis-

IN ERROR.
. . . . . .
ALBANY,
Feb. 1818.

DUNHAM
v.
DEY.

sion, was usurious, the commission, in fact, amounting to more than legal interest. (*Dunham* v. *Dey*, 13 *Johns. Rep.* 40.) The bill contains a sufficient charge under which to introduce the question.

It is objected, that the respondent has an adequate remedy at law, as regards the deed of *January*, 1810. But where a Court of Equity has jurisdiction of part of a subject, it may take cognizance of all the matters connected with it, although strictly of a legal nature, and the exception can be taken no otherwise than by demurrer. (*Ludlow* v. *Simond*, 2 *Caines'* *Cas. in Error*, 1.) Besides, a court of law could not, in this instance, have given the requisite relief; it could not have directed the deed to have been delivered up, which is one of the principal objects of the decree.

The next question is, was this instrument a mortgage? Upon the face of it, it was an absolute conveyance; but in fact, and so the answer admits, it was merely a collateral security; it was conditional and defeasible, although the defeasance was by parol; and after the execution of the written defeasance, in *July*, 1810, it clearly became a mortgage. There is no necessity that the two instruments should be simultaneous, where the conveyance derives its effect from the statute of uses, and not from livery of seisin. Being a mortgage, it must be registered as such. As between the parties themselves, every mortgage is a trust, but when the rights of third persons are involved, it is no more than a mortgage, and their respective claims are to be decided by the provisions of the act concerning mortgages, which does not require the recording of a trust.

If, then, the transaction be established as a mortgage, the inquiry remains, whether the respondent was a *bona fide* mortgagee; although the objection comes with an ill grace from the appellant. He who charges fraud against another, must himself be free from all imputation; yet the deed, which is the basis of the appellant's title, asserts a falsehood; it pretends to be an absolute, when it is only a defeasible, conveyance; and the falsity of an instrument is sufficient to destroy its efficacy. (2 *Sch. & Lefroy*, 501.) But admitting it to be available to any intent, notice, at least actual notice, (for the law, in cases of this description,

regards no other,) (1 *Madd. Ch.* 260, 261.) is not brought home to the party. The rule laid down by the Chancellor, in the court below, as the result of the numerous decisions upon the subject, is undoubtedly correct, that there must be actual fraud, and although there may be cases in which notice devested of fraud has been held sufficient, yet the proof must be extremely clear. No other principle can be deduced from the opinion of Lord *Hardwicke* in *Le Neve* v. *Le Neve*, and there is nothing to be found in *Newland* or *Sugden*, which in the least impugns the doctrine ; and it is confirmed by all the decisions on the subject that have occurred in the Supreme Court. (*Jackson, d. Bonnel and others*, v. *Sharp*, 9 *Johns. Rep.* 163. *Jackson, d. Humphrey and others*, v. *Given and others*, 8 *Johns. Rep.* 137. *Jackson, d. Bonnel and another*, v. *Wheeler*, 10 *Johns. Rep.* 165. *Jackson, d. Gilbert*, v. *Burgott*, 10 *Johns. Rep.* 457.) But in this case the notice arising from the schedule was lame and defective. The *act concerning mortgages* (sess. 36. c. 32. § 3. 1 *N. R. L.* 373.) makes it indispensable that the defeasance should be registered with the deed, at all events, and no question can occur as to notice. If, however, the case falls within the second section of the act, still there must be actual notice ; a mere implied or constructive notice is not sufficient. The cases cited by the opposite counsel, in support of his position, are inapplicable ; they are not cases arising under the registry act, which makes this a question not of fraud, but of diligence.

The notes, for securing which the deed was given, were taken up by other notes, which were afterwards paid, and, therefore, the condition having been performed, all the appellant's title under it ceased. If there were other notes outstanding, it was incumbent on the appellant to produce them. As his dealings with the *Wards* were multifarious, there may possibly have been other notes ; but if so, they are not traced to, and connected with the first notes of *July*, 1810, for which the security was given.

*T. A. Emmet*, in reply. It is an acknowledged rule, that an appeal must state the grievance ; otherwise there can be no issue on the point, and the opposite party would be

IN ERROR.
.......
ALBANY,
Feb. 1818.

DUNHAM
v.
DEY.

taken by surprise. The reason of the rule equally applies to the case of a respondent, who should not be allowed to introduce his own complaint, without giving notice to his adversary by a cross appeal. Nor is the practice analogous to a rehearing; for a rehearing is, to almost every purpose, an original bill, under which new exhibits and new matter may be introduced. If the decree be silent as to usury, there is nothing from which the party can appeal.

But how would the respondent have stood, supposing a cross appeal had been filed? He is not entitled to an account, for the *Wards* are not parties, which was particularly requisite here under the circumstances of the case. An assignor must be party to a bill in relation to the subject of the assignment. (*Ray* v. *Fenwick*, 3 *Bro. Ch. Cas.* 25. *Cathcart* v. *Lewis*, 1 *Ves. jun.* 463. *Coop. Eq. Plead.* 34. In opposition to this principle, *Riggs* cited *Clute* v. *Robinson*, 2 *Johns. Rep.* 595. in which a bill of foreclosure was filed by the assignee of a mortgage, without making the mortgagee a party.) The bill is too vague as to any specific account; and, besides, the respondent does not offer to pay the balance, if found against him, nor is there any person before the court who can be compelled to satisfy the appellant for what may be found due to him, on taking an account. The respondent is not entitled to it on the ground of usury, as he has not offered to pay what may be actually due.

The mortgage act has no reference to a parol defeasance, and there is no case to be found, in which it has been held, that a parol understanding would make an absolute deed a mortgage. Had *Ward* filed a bill against the appellant, he could not have been compelled to answer as to the parol agreement; he might have pleaded the statute of frauds; or even admitted the fact, and still insisted on the statute. By the defeasance, the deed is not converted into a mortgage, but it raises a trust. It was subsequent in point of time; and to constitute a mortgage, the condition of redemption must enter into the contract, in its first formation. It was, therefore, not necessary that the deed should have been registered as a mortgage. The priority given by the act relates only to mortgagees, and not to purchasers.

As to the question of notice, it is said by *Maddock*, (1 *Madd. Ch.* 261.) that it may be proved by parol evidence. In the present case, the notice was all in writing, and it cannot be presumed, nor will the respondent be permitted to suggest, that he never read his deed. A recital is notice. (*Cuyler* v. *Bradt*, 2 *Caines' Cas. in Error*, 326.) The schedule to this deed must be taken as if incorporated with it, and by it the respondent must have learnt that the legal title was in the appellant; it was not only notice that he held the legal title, but it was notice of the quantity of interest vested in him, and that *ard* could only have intended to convey an equitable estate to the respondent. The second deed was not designed for a mere particular description of the premises, but is a confirmation of the title, and, therefore, it shows that the first was defective.

PLATT, J. The object of the respondent's bill was to vacate and cancel the title of *David Dunham*, on three grounds; 1st. That the debt for which the lots were pledged to *Dunham*, had been paid; 2dly. That the deed to *Dunham* was in violation of the statute against usury, and, therefore, void; and, 3dly. That the conveyance to *Dunham* was not registered as a mortgage, pursuant to the statute; and, therefore, it cannot defeat or prejudice the subsequent conveyance to *Dey*.

The *payment*, and the *usury* charged in the bill, are denied in the answer. Whether the Chancellor has properly decided that the evidence does not support the allegation of usury, is a question which does not necessarily arise; because the bill is not framed or adapted for relief on the ground of usury. The complainant does not ask to redeem by paying the money actually lent, with interest. If that were his object, there never would have been any disagreement between the parties.

The course of reasoning pursued by the Chancellor did not require him to examine the question of *payment;* and he, therefore, expressed no opinion on that point.

According to my view of the case, the allegation that the debt to *Dunham* has been paid, is not well founded. The repeated renewal of the notes, which were the evidence of

IN ERROR.
•••••••
ALBANY,
Feb. 1818.

DUNHAM
v.
DEY.

that debt, is to be regarded as an extension of the credit, from time to time; but ought not to be deemed an extinguishment or satisfaction of the original debt, for which the conveyance to *Dunham* was given as security.

This renders it necessary to examine whether the statute concerning mortgages, as applicable to this case, required the registry of the conveyance to *Dunham*, as a mortgage, in order to preserve his lien against the subsequent deed to *Dey?*

The provision of the statute is, " that no mortgage, nor any deed, conveyance, or writing, in the nature of a mortgage, shall defeat or prejudice the title or interest of any *bona fide* purchaser of any lands, tenements, or hereditaments, unless the same shall have been duly registered," &c. Before this statute, mortgages gained preference, and took effect as *liens*, both at law and in equity, according to their true dates, independent of any notice, either actual or constructive. The unregistered mortgage to *Dunham*, in this case, is prior in date; and assuming that it was originally a valid security, it remains to inquire, whether the statute has deprived him of his prior *lien?* The statute annuls a prior unregistered mortgage, in one case only; and that is, in favour of a subsequent " *bona fide purchaser.*" The only question, then, is, whether *Dey*, claiming to defeat the security of *Dunham*, is to be regarded as a " *bona fide purchaser*," in the true sense of the statute? I incline to the opinion, that he is not. By a " *bona fide* purchaser," I understand the statute to mean, a person who buys without knowledge of the prior mortgage; and who would, in fact, be defrauded, if such prior incumbrance were to stand in opposition to his title. The manifest object of the statute was to protect purchasers against prior secret conveyances, of which such subsequent purchasers had no notice.

I cannot suppose that the Legislature intended to favour, much less to give priority to, a purchaser who buys with notice of a prior unregistered mortgage, and with intention to defeat it, by taking advantage of the *laches* or inadvertence of the prior mortgagee. Notice supersedes registry, because it effects the same object, which is to apprize

the purchaser of the prior incumbrance. An unregistered mortgage is valid between the mortgagor and mortgagee; and whoever takes a conveyance with intent to invalidate such security, is not a *bona fide* purchaser, but voluntarily aids in defrauding the mortgagee.

What degree of particularity, or certainty in the notice, is necessary to affect the purchaser, and supersede registry, it is often difficult to decide. In the case of *Hine* v. *Dodd*, (2 *Atk.* 275.) Lord *Hardwicke* says, " the register act is notice to every body ; and the meaning of this statute was to prevent *parol* proof of notice, or no notice." He admits, " there are cases where the court has broke in upon this" rule; but insists, " it was in cases of fraud." His Lordship then observes, " there may possibly have been cases, upon notice, devested of fraud ; but then the proof must be extremely clear." The luminous mind of that great man seldom evinced such a want of precision and perspicuity, as in the opinion which I have quoted. It would, perhaps, have been more correct to say, that where the proof of notice is clear and certain, it is, *per se,* evidence of fraud in him who attempts to defeat a prior incumbrance, by setting up a subsequent deed. In this case, the notice of the mortgage was not particular as to the date, or sum, or time of payment; but the purchaser was expressly notified in writing by *Ward,* the grantor, that " the title of the land was in *David Dunham,* as collateral security, to pay certain notes." The notice was not only in writing, but contained in a schedule annexed to, and forming part of the deed, under which the purchaser claims. It must receive the same construction, as if it had been incorporated into the body of the deed. Suppose then the grant had been in this form : I, *Matthias Ward*, grant, bargain, and sell to *Anthony Dey*, and his heirs, all my " estate and property in the lots in Stewart street, the title to which is in the name of *David Dunham,* given as collateral security to pay certain notes ;" would such a transposition of the same words, from the schedule to the body of the deed, make any difference in the construction of the whole instrument ? I think not ; and if so, then the purchaser not only had express notice of the mortgage to *Dunham,* but the very deed itself pur-

IN ERROR.
.......
ALBANY,
Feb. 1818.

DUNHAM
v.
DEY.

IN ERROR.
. . . . . . .
ALBANY,
Feb. 1818.

DUNHAM
v.
DEY.

ported to convey no more than a mere undefined equitable interest in those lots, subject to the prior legal and equitable title to *Dunham.* The deed contained a reference to *Dunham's* title, not merely in regard to the sum for which the lots were pledged, and when payable; but also for the designation and description of the lots themselves; for without examining the title of *Dunham*, it is impossible to ascertain what lands were meant to be conveyed to *Dey.* The only description of the premises granted by that deed, is contained in the schedule; the deed did not in its terms profess to convey to *Dey* the entire estate in those lands, but merely such portion of equitable interest as remained in *Ward*, after mortgaging them to *Dunham;* or, in other words, the conveyance to *Dey* expressed no more than an assignment of the equity of redemption.

*Ward*, in this case, so far from deceiving *Dey*, by pretending to convey to him an estate, of which he had before devested himself, expressly informed *Dey* that he had no legal estate in these lots; for that the title was in *David Dunham. Dey* then knew that he purchased no more than the equitable interest of *Ward*, subject to the lien of *Dunham*, whatever that might be; and the fair construction of the transaction is, that *Dey* voluntarily took upon himself to investigate the title of *Dunham*, and to ascertain the extent of his lien, so that he might redeem the lots, if he thought proper, for the benefit of the creditors whom he represented.

I do not find it necessary to impugn or to question the decisions in *Hine* v. *Dodd*, (2 *Atk.* 275.) *Jolland* v. *Stainbridge*, (3 *Vesey Jun.* 478.) or any others cited by the counsel for the respondent. In the case of *Le Neve* v. *Le Neve*, (3 *Atk.* 646.) Lord *Hardwicke* said, "it would be a most mischievous thing, if a person taking the advantage of the legal form appointed by an act of parliament, might, under that, protect himself against a person who had a prior equity, of which he had notice." In the case of *Jackson* v. *Neely*, (10 *Johns. Rep.* 374.) and several others, in our own courts, the same construction of our registering and recording statutes, has been sanctioned.

The decree of his honour the Chancellor, in setting aside

the conveyance to *Dunham*, is, therefore, in my judgment, erroneous, and ought to be reversed.

This being the unanimous opinion of the court, it was thereupon ORDERED, ADJUDGED, and DECREED, that the decree of the Court of Chancery be reversed; that the respondent's bill be dismissed; and that he pay to the appellant his costs in the Court of Chancery, to be taxed; and that the record be remitted, &c.

IN ERROR.<br>.......<br>ALBANY,<br>Feb. 1818.<br>~~~~~~<br>MURRAY<br>v.<br>RIGGS.<br>*April* 1.

Decree of reversal. (*a*)

(*a*) The only point determined in the court below, declared to be erroneous by the above decree, is as to the sufficiency of the *notice* to the respondent of the prior deed to the appellant, the defeasance to which was not recorded, at the time of the assignment to the respondent in trust.