1837.

Rogers
v.
The Trader's
Ins. Co.

---

ROGERS and others *vs.* THE TRADER'S INSURANCE COMPANY and others.

THE SAME *vs.* THE HOWARD INSURANCE COMPANY and others.

Where the agents for the proprietors of a steam boat effected an insurance upon the boat for the benefit and on account of whomsoever it might concern at the time of loss, if any should occur; *Held*, that a mortgagee of the interest of one who was an owner at the time of the insurance and for whose benefit the policy was underwritten, had a right to the mortgagor's portion of the insurance money, to the extent of the debt secured by the mortgage.

Where the underwriter means to rely upon the insufficiency of the preliminary proofs, the objection must be distinctly made; and if he puts his refusal to pay upon other grounds, without any suggestion that the preliminary proofs are insufficient, the objection to the sufficiency of such proofs will be considered as waived.

A mortgagor of personal property who has mortgaged the same for its full value, is not a necessary party to a bill filed by the mortgagee against the underwriters to recover upon a policy insuring such property on account of whoever it might concern as owner at the time of loss; the mortgagee then being the legal owner of the property.

Where the mortgagee of a steam-boat, who had taken the mortgage as surety for the payment of a note endorsed by him, was compelled to pay the note when it became due, and to save the credit of the drawers he gave them his check to take up the note instead of suffering it to be protested; *Held*, that the debt for which the mortgage was given was no

1837.

Rogers
v.
The Trader's
Ins. Co.

July 18.

extinguished, and that the mortgage still remained a valid lien upon the boat for the security of the amount due the mortgagee.

If the testimony in a cause is equally balanced, the party who holds the affirmative as to the disputed fact to which such testimony relates, must fail.

Where the agent of the original owner of property effects an insurance thereon for the account of whoever it may concern at the time of loss, and by the terms of the policy the insurance money, in case of loss, is made payable to such agent, if the assured assigns his interest in the property, to a bona fide purchaser or mortgagee, before any loss has accrued, the agent has no lien upon the insurance money, as against such assignee, for a general balance due from the assignor.

In the court of chancery the assignee of a chose in action is not permitted to sue in the name of the assignor; but the suit must be brought in the name of the real party in interest.

THESE cases came before the chancellor upon appeals from the decision of the vice chancellor of the third circuit. The bill in each case was filed to recover from the defendants, the insurance company, the one fourth of the amount of a policy upon the steam-boat Alabama which was destroyed by fire ; by which event the owners sustained a total loss. The facts in the two cases being the same, it was agreed by the counsel for the respective parties, upon the hearing before the vice chancellor, that both causes should be heard together ; that the several allegations in the bills, and the defences set up in the answer, in each suit should be considered the same in both ; and that the testimony taken in each suit should be read and used in either, subject to all legal objections thereto. The causes were heard upon pleadings and proofs as against the insurance companies and the defendant Winthrop ; and upon the bills taken as confessed against the defendants' Stratton and Stow. The vice chancellor decided and decreed that the insurance companies were respectively liable to the complainants for the sum of $2500 ; being the amount of the one fourth of their respective policies upon the steam-boat, together with the interest thereon. And he directed references to a master to compute the amount of such interest, reserving the question of costs and all further directions. From this decision the insurance companies appealed. And upon the hearing before the chancellor, it was agreed that if the decrees were affirmed, he should dispose

of the question of costs, and that the amount of interest should be computed and inserted in the decrees, so as to make a final decision of the causes.

The following is the opinion of the vice chancellor delivered in the case of the Howard Insurance Company, and which is applicable to both suits.

J. Vanderpoel, V. C. The first objection is to the sufficiency of the preliminary proofs. The object of offering such proof is to furnish reasonable information to the insurer, so that he may be able to form some estimate of his rights and duties, before he is obliged to pay. It has always been liberally expounded, and is construed to require only the best evidence of the fact that the party possesses at the time. Was there any such proof offered here? Stow, as it appeas from the answer, on the 5th day of August, 1826, notified the defendants in writing, that he was entitled to one fourth of the loss, and desired the company to pay the same to him, and forbid them from paying it to Stratton and Winthrop. On the 12th day of September, 1826, he delivered to them his affidavit, stating that at the time of the loss, he was the owner of one fourth part of the boat, by virtue of a certain deed of mortgage executed by Duncan, and being the whole of his interest, which remained in full force; that the debt for which it was given remained unpaid and unsatisfied. And he also delivered to them a copy of the assignment or mortgage. It is contended, however, that the mortgage itself should have been exhibited, and a satisfactory reason given why the note was not produced. If this position is correct, then the next inqury will be, has not the company waived the production of the technical preliminary proofs which they now set up as a bar to a recovery? The law is now settled that if the underwriters make no objection to the preliminary proofs, but put their refusal to pay upon the ground that they are not liable to the person who exhibits his claim, it is a waiver of preliminary proof of interest. In the case of *Francis* v. *The Ocean Insurance Company*, (6 *Cowen*, 404,) the court

say that the defendants waived whatever imperfection there may have been in the preliminary proofs of the plaintiff's interest in the subject insured, by not putting their refusal to pay upon that ground. This case was removed into the court of errors, and the doctrine laid down by the supreme court was approved and fully established. (2 *Wend. Rep.* 64. See also *Voss* v. *Robison*, 9 *John. Rep.* 192, *and* 7 *id.* 315. 8 *id.* 307.) No objection was made by the company when Stow demanded payment for the loss, and exhibited his proof of interest. If the objection which is now urged had then been taken, the deficiency might have been readily supplied, by producing the assignment and accounting for the non-production of the note if that had been essential to establish his interest. The defendants in their answer admit that they disregarded Stow's prohibition not to pay Stratton & Winthrop, and sometime thereafter paid to them the amount now in controversy. They did then and still insist, that they were bound to pay Stratton & Winthrop ; thus excluding the idea that Stow had any claim upon them which he could enforce.

The next objection interposed to the complainant's recovery is, that Duncan is interested and ought to have been made a party to this suit. On the 4th of January, 1826, he assigned to Stow one fourth of the steam-boat Alabama, to be held as collateral security for the payment of Daggett's and Roberts' note, endorsed by Duncan, in favor of Stow. The boat had been insured at the office of the defendants for ten thousand dollars, and Duncan's interest therefore in the policy was two thousand five hundred dollars. During the continuance of the policy, the boat was entirely destroyed by fire. It is contended by the complainants that the debt for which the note was given is still unpaid, and that the assignment therefore became absolute. It is admitted that the instrument executed by Duncan is a mere mortgage ; and it is urged that as mortgagor he ought to be made a party. (3 *John. Cas.* 322. 4 *John. Chan. Rep.* 149.) There is, however, a manifest difference between a mortgage of real and personal property. The former is merely a security for the debt ; the mortgagee has only a

chattel interest, and the freehold remains in the mortgagor; it cannot be sold by the mortgagee on default of payment without a bill of foreclosure and a decree of sale. Not so, however, with a mortgage of personal property; it tranfers the whole interest, and in fact the mortgagee becomes the owner. (1 *Peters,* 441, 446.) After the condition is forfeited, the mortgagee of a chattel has an absolute interest in the thing mortgaged, so that the mortgagor cannot, by tendering the debt, entitle himself to an action of trover against the mortgagee. (*Brown* v. *Bement,* 8 *John. Rep.* 96. *Ackley* v. *Finch,* 7 *Cowen,* 290. *Jones* v. *Smith,* 2 *Ves. jun.* 378.) And if the mortgagee sells or disposes of the goods, the title of the purchaser is complete, and he shall hold it discharged from all claim on the part of the original owner. If the complainants are correct in their position that the debt for which the mortgage was given is unsatisfied, and that the mortgage was in full force when that debt became due, then, according to the authorities I have cited, the interest of Stow became absolute, and his assignee will at all events hold the property discharged from all claim on the part of Duncan for redemption. And the rights of the latter, if they are not absolutely extinguished, are reduced to a mere equity to call upon Stow, the mortgagee, to account for the value of the property over and above the amount due. Suppose that in this case Duncan had been made a party, what object could it have answered? In ordinary cases it is necessary to bring in the mortgagor to give him an opportunity to redeem, and thus become reinvested with the title to the property. In this case there was nothing to redeem, the subject matter, if I may be allowed the expression, had been destroyed, and the controversy is now reduced to a contest for the fund of two thousand five hundred dollars to satisfy a claim of five thousand dollars; which claim, if valid, it is admitted on all hands, absorbs the whole and destroys the possibility of redemption. Suppose that instead of the boat, the policy had been mortgaged, what purpose would it have answered to have brought in the mortgagor to redeem? The fund was money. A sale could not enhance its value, nor swell it beyond

the amount of the claim for which it was mortgaged. When the mortgage is of money in the stocks, or the like, no decree of foreclosure is necessary. In *Lockwood* v. *Ewer*, (2 *Atk.* 303,) a bill was brought to redeem two thousand five hundred pounds East India stock transferred to secure the payment of two thousand pounds and interest. The lord chancellor said it was a plain case for the defendants; that on a mortgage of land, a bill of foreclosure ought to be brought, but on a mortgage of stock it was not necessary. There was therefore no necessity to make Duncan a party, nor can his testimony be impeached upon the ground of interest. As between these parties it is completely balanced, inasmuch as a recovery by either would create a liability on his part to the one who is defeated.

The insurance was procured by Stratton & Winthrop, who acted as agents and factors of John Duncan, jr. & Co. and it is contended that this, by operation of law, gave them a lien upon the policy for advances made for the insured, or for any general balance that might be due to them upon account. This principle cannot be controverted; it is sanctioned by mercantile usage, and is now fully supported by authority. (*Godin et al.* v. *London Insurance Company*, 1 *Burrow*, 489. *Liv. on Agency*, 196. *Foster* v. *Hoyt*, 2 *John. Cas.* 327.) These cases are, however, clearly distinguishable from the one before the court. From an examination of them it does not appear that any person was to be interested or benefitted by the policy except the original owner of the goods insured; which gave to the agent or factor a lien for advances made, or for a general balance that might be due to him from the insured. The policies in those cases did not contemplate an assignment or change of ownership, and the existence of the lien, therefore, could not operate to the injury or prejudice the rights of third persons. Who were to be benefitted by the terms of the present policy? Not John Duncan, jr. & Co. alone, which would have entitled Stratton & Winthrop to their lien; but the insurance was made "for account of whom it may concern, at the time of loss, as owner," &c. Thus contemplating an assignment, and even permitting the insured to part

with his interest during the existence of the policy; and negativing the idea of any claim except of *the owners at the time of loss.* It has already been shewn, that the mortgage or assignment to Stow constituted him an owner, and therefore, as against his interest and those claiming under him, the lien of Stratton & Winthrop was inoperative and destroyed. It is evident, also, that this was the construction given by Stratton & Winthrop to the policy : For, disregarding the lien which is now set up, T. N. Niles, one of the members of the firm, took an assignment from Daggett & Roberts, in February, 1826, for the interest in the boat; and he knew at the time that Duncan had assigned his right to Stow to secure him for the money he had loaned and of which they (Stratton & Withrop,) had received the benefit. But it is said that according to the terms of the contract, Stratton & Winthrop alone had a right to receive the money, and therefore that they had the right to appropriate it to the payment of their debt against the insured. In this I apprehend the defendants are mistaken. The words " loss payable to S. & W." merely constituted them the attornies for the *owners,* whoever they might be. This provision in the policy does not control or destroy the right previously acquired, nor deprive them of the general power of revocation, nor does it prohibit them from assigning their interest, after notice to the company, and before payment.

Did Duncan's assignment to Stow transfer the policy, and if it did, has that interest been extinguished? If the rule was not well established that the assignment of the boat draws after it the policy as incident thereto, still in this case I would be relieved from all difficulty, by the principle that I have already recognized that Stow, as mortgagee, was, for all legal purposes, to be considered as owner, and therefore as such, by the terms of the policy, the loss was to be paid to him.

But it is said that his interest has been extinguished by the payment by Daggett & Roberts of the note for which the mortgage was given. If this fact is established, then the complainants acquired no title from Stow ; the com-

1837.

Rogers
v.
The Traders'
Ins. Co.

pany are not responsible for the claim that is now set up, and the bill ought to be dismissed. What are the facts as admitted and proved? The house of John Duncan, jun. & Co. were indebted to Stratton & Winthrop for advances by them for building the boat; the firm when called upon for payment represented their inability to comply, and were obliged to call in the aid of their friends to furnish them with the means of redeeming their credit; and an application was then made by them, with the knowledge of Niles, one of the firm of Stratton & Winthrop, to Stow for the loan of his note for five thousand dollars, upon which the money was raised and transmitted to Stratton & Winthrop. Upon this statement alone it would perhaps be a subject worthy of consideration, whether the payment towards the lien of Stratton & Winthrop, if any such existed, and with their knowledge and assent with funds obtained upon Stow's responsibility, did not for that amount invest him with all their rights and equities, and substitute him in their place to enforce them until that responsibility was discharged. The assignment which Stow afterwards received would then be considered a mere cautionary measure, and could not be construed as a waiver of a right already acquired. The case, however, does not stop here. It appears that Stow was obliged to pay the note when it became due, and Daggett & Roberts, two of the members of the firm of John Duncan, jun. & Co., who, upon the dissolution succeeded to the rights and became responsible for the liabilities of the firm, gave their note to Stow, endorsed by Duncan, payable at the Mobile Bank; and as collateral security Duncan gave him an assignment of one fourth of the boat. When this note became due, Daggett & Roberts were unable to pay it, and Stow at their request gave his check to take it up. And it is now contended that this was a payment of the note, and consequently that the assignment or mortgage was satisfied and extinguished. Is this a fair construction of the transaction, and comporting with equity and good conscience? The lien of Stratton & Winthrop could not extend to more than five thousand dollars, for that was the whole interest of Duncan in the policy. This they received,

1837.

Rogers
v.
The Traders'
Ins. Co.

and they now contend that this lien, already satisfied, shall be again revived to enable them to recover from the company money which in fact they had already received from Stow. This appears to me to be opposed to all the principles of law and equity. Was the original debt for which the mortgage was given satisfied and paid ? Duncan says it was not. Daggett & Roberts both say it was unpaid, and that they did not conceive the security impaired, nor did they intend that a new loan should be created. Stow looked to his mortgage for indemnity. There is nothing in the case from which an inference can be drawn that he intended to surrender *it.* Indeed, if that was the intention of the parties, why was not the mortgage itself given up and cancelled ? Its existence speaks a language which cannot be mistaken, and it is in perfect accordance with all the facts in the case. The case of *Dunham* v. *Dey,* (15 *John. Rep.* 555,) established the principle that the renewal of notes secured by a mortgage does not affect the security. Another objection taken by the defendants is, that the assignment by Stow to the complainants is merely for the money insured ; that it did not invest them with any rights or equities, and that notwithstanding the assignment, his debt against Daggett & Roberts was still in full force. This objection has already been anticipated. As mortgagee he became absolute owner of the boat ; as such his title to the money embraced by the policy was according *to its terms consummated by the* loss, and he had a right to collect, and if to collect to assign his interest. By the assignment also, his debt against Duncan & Co. or Daggett & Roberts was collected and paid.

As to the last point of the defendants, I have barely to observe, that I cannot conceive how the attachment procured by the complainants in eighteen hundred and twenty-six, against this fund, for their guarantee of drafts accepted by Stratton & Winthrop and which the latter were obliged and afterwards did pay and had the attachment withdrawn, could defeat the complainants' right acquired in eighteen hundred and twenty-eight from a person who had no notice of the attachment and whose interest was complete and perfect.

I shall therefore decree that the company pay to the complainants the sum of two thousand five hundred dollars with interest, to be computed by a master, &c.

*H. W. Warner*, for the appellants.

*J. Duer & A. G. Rogers*, for the respondents.

THE CHANCELLOR. The facts in these cases, though most of them are undisputed, are somewhat complicated; and a brief statement thereof is necessary to a proper understanding of the questions to be considered on the appeals. In 1825, J. Duncan, jun., E. H. Roberts and H. Daggett were copartners in trade at Mobile, under the name or firm of John Duncan, jun. & Co. The defendants P. Stratton and T. C. Winthrop were merchants at New-York, doing business in the name of Stratton & Winthrop; and were also connected in business at Mobile with T. N. Niles, under the firm of T. N. Niles & Co. The steam boat in question was built that year by Duncan & Co., who were to be owners of three fourths of the boat, and G. & J. Goff of one eighth and N. Heyden of the remaining eighth. To pay for the building of the boat, or for labor done on the same, Niles & Co. became the endorsers upon notes of Duncan & Co. to the amount of $3300; which notes were afterwards paid with funds furnished by the endorsers. J. Duncan & Co. were also indebted to Stratton & Winthrop and to T. N. Niles & Co. upon other accounts, for the security of which Daggett and Roberts, two of the copartners, promised to transfer their interests in the boat, which was subsequently done. The copartnership of Duncan & Co. was dissolved in November or December, 1825, and a new partnership was formed by and between Daggett & Roberts. Previous to this time, however, the original firm, as the agents for all the owners of the boat, had directed Stratton & Winthrop to get her insured for the benefit of those who might be such owners. On the 12th of December, 1825, but whether before or after the dissolution of the firm of J. Duncan, jun. & Co. does not appear, Stratton &

1837.

Rogers
v.
The Traders'
Ins. Co.

Winthrop applied to the Traders' Insurance Company and to the Howard Insurance Company in New-York, to insure $20,000 on the boat for the period of seven and a half months from the 15th of November preceding, on account of John Duncan, jun. & Co. or whoever might be the owners when the loss or damage, if any, should take place. And each insurance company underwrote a policy accordingly for $10,000; in which policies the risk was specified to be on *account of whomsoever it might concern at the time of loss,* if any should occur ; the loss, if any, payable to Stratton & Winthrop, New-York, first deducting the premium note if unpaid. Upon the dissolution of the firm of John Duncan, jun. & Co., each of the copartners took one fourth of the boat ; and the boat was subsequently enrolled in their names respectively, as such owners, and in the names of G. & J. Goff and N. Hayden, who were the owners of the two remaining eighths. Previous to the insurance, Stratton & Winthrop had accepted a draft of Duncan & Co. to pay for the engine and other machinery for the boat ; which acceptance was afterwards paid with the proceeds of a note of $5000, which the last named company had borrowed of D. Stow, of Mobile, for that purpose. For this note, which was ultimately paid by Stow, the members of the late firm, on the fourth of January, 1826, gave to him a note for $5000, drawn by Daggett & Roberts and endorsed by Duncan, payable at the Bank of Mobile sixty days after date ; and secured by an assignment to Stow of Duncan's one fourth of the steam boat. This note was endorsed by Stow and discounted for his benefit at the bank. But when it became due, Duncan being absent and Daggett & Roberts not having funds to pay it, Stow was obliged to furnish the means to take it up himself. He accordingly gave his check for that purpose, with which they paid the amount to the bank and took up the note. After the loss of the boat, Stratton & Winthrop having failed, and Duncan and Daggett & Roberts being insolvent, and the debt secured by the assignment of Duncan's interest to Stow remaining unpaid, Stow gave notice of his rights, un-

der the assignment, to the insurance companies and forbade the payment of his share of the loss to Stratton & Winthrop. The insurance companies, however, paid the whole amount of the loss over to them, upon receiving an indemnity against the claim of Stow. In 1828, Stow assigned to the complainants all his right and interest in the sums insured by the two companies upon the boat, and all his rights and claims against the companies; to be applied towards the payment of his previous indebtedness to the complainants.

The objection which was made before the vice chancellor on account of the supposed insufficiency of the preliminary proofs was not well taken, for the reasons stated by the vice chancellor in his opinion. That objection was, therefore, very properly abandoned by the counsel for the appellants, upon their argument here. (a)

Niles was not a necessary party to the suit, although he was interested in sustaining the claim of Stratton & Winthrop to the whole amount of the insurance money; as the complainants' claims were against the insurance companies alone. And it was probably not necessary to make Stratton & Winthrop parties for any other purpose than that of getting possession of the policies, which were supposed to be in their hands or subject to their control. The complainants had a right to make them parties, however, if they thought proper, for the purpose of charging them with the payment of the monies wrongfully received by them, if the insurance companies were unable to pay. For the reasons which are very fully stated by the vice chancellor in his opinion, I am also satisfied that Duncan was not a necessary party. And his interest being equally balanced in relation to the matters as to which he was called to testify, he was not an incompetent witness. If the complainants recovered, it discharged his liability to Stow *pro tanto;* and if Stratton & Winthrop succeeded in recovering the money, by reason of the alleged lien upon the policy for the supposed balance due them on their acceptances and liabilities on

(a) See *Ætna Fire Insurance Company* v. *Tyler,* 16 *Wend. Rep.* 401.

account of the late firm of John Duncan, jun. & Co., that debt would be discharged to the same extent.

The next objection to the complainants' right to recover is that the taking up of the note at the bank by Dagget & Roberts, although with the funds furnished by Stow himself, was a discharge of the mortgage upon the boat. In cases of this kind the court will always look to the real nature of the transaction, and will not consider a mortgage discharged by the mere change, or even the destruction of another security for the same debt, if it was not the intention of the parties to destroy the lien of the mortgage. (*a*) In the case of *Hardwick* v. *Mynd*, (1 *Anst.* 111,) the court of exchequer decided that the taking of a bond from the mortgagor for the arrears of interest, which bond was never paid, was not a discharge of the lien of the mortgage for such interest, although a receipt was actually endorsed upon the mortgage for the interest. So in the case of *Davis* v. *Maynard*, (19 *Mass. Rep.* 242,) where the mortgage was given to secure the payment of a sum of money due on a promissory note, and the mortgagee afterwards accepted a recognizance for the sum due, and left the mortgage with the justice before whom the recognizance was acknowledged, who delivered it up to the mortgagor, the supreme court of Massachusetts held that the lien of the mortgage was not thereby discharged. And in the case of *Dunham* v. *Dey*, (15 *John. Rep.* 555,) the court of errors in this state decided that where a mortgage is given to secure the payment of a promissory note, the subsequent renewal of the note is not to be considered an extinguishment of the original debt so as to discharge the lien of the mortgage. See also *Dartnell* v. *Taylor*, (1 *Lloyd & Goold's Rep.* 247;) and *Saunders* v. *Leslie*, (2 *Ball & Beat. Rep.* 509.) In this case it is very evident that it was never the intention of either of the parties to the transaction that the lien of the mortgagee upon the boat should be discharged, by his furnishing the funds to take up the note at the bank and thus to save the credit of the drawers. This note has not therefore been paid, within the true intent and meaning of the condition of the assign-

(*a*) See *Pomeroy* v. *Rice*, 16 *Pickering's Rep.* 22.

1837.

Rogers
v.
The Traders'
Ins. Co.

ment. And the mortgage having become forfeited by the failure to perform the condition, the legal title to one fourth of the steamboat was in Stow as the owner thereof at the time of the loss. (*Langdon* v. *Buel,* 9 *Wend.* 80. *Fergusson* v. *Lee, Idem,* 258. *Case* v. *Boughton,* 11 *Idem,* 106.)

In this case the underwriters contemplated that a change of ownership of the boat might take place during the continuance of the risk, and intended to insure whoever might be the owners from time to time ; so that those who should be interested as such owners at the time when any loss should occur should have the benefit of the policies. Stow, therefore, had an insurable interest at the time of the loss, to the extent of $5000, which was actually covered by the policies. And there is no doubt as to his equitable right to claim that amount from the insurance companies unless Stratton & Winthrop had a preferable lien, in their character of agents for making the insurance.

I lay entirely out of view the allegations in the answers that there was an agreement on the part of Duncan that Stratton & Winthrop, or T. N. Niles & Co. should have a specific lien upon the insurance money for the purpose of paying acceptances or securing any general indebtedness of John Duncan, jun. & Co. to either of those houses. Even if Niles and Duncan were both competent witnesses and equally disinterested, these allegations in the answers must be considered as unsustained by the proofs ; as the testimony of Niles on that subject is most positively and unequivocally contradicted by that of Duncan himself with whom the agreement is alleged to have been made. And where the testimony in a cause is equally balanced, the party who holds the affirmative as to the disputed fact must fail. Besides, if this allegation in the answers was proved, I am inclined to think Stow had the preferable equity, to the extent of the $5000 which he advanced to meet the draft which was accepted by Stratton & Winthrop.

The debts, if any, which were due to Stratton & Winthrop, and to T. N. Niles & Co. were the joint debts of Duncan and his former copartners ; and at the time of the

loss their interests in the boat had been severed, if they had not in fact been severed previous to the insurance. The agents for the company which had formerly existed would not, therefore, have had any general lien at the common law upon the separate share of Duncan in the insurance money, under the special provis-. ions of this policy, even if the assignment to Stow had not been made. But as the policy in terms insured whoever should be the owner of the boat at the time of loss, and Stow was then the owner of one quarter thereof by virtue of the assignment from Duncan, all pretence of a lien upon that portion of the insurance money for any general balance which might be due from John Duncan, jun. & Co. entirely fails. The agents cannot object to the severance of the joint interests which Duncan, Dagget, and Roberts once had in the boat, as they had themselves ratified such severance, as copartners in the firm of T. N. Niles & Co. by taking an assignment of the separate shares of Dagget & Roberts in payment or security for the indebtedness of the former partnership of John Duncan, jun. & Co. Again; I think the evidence in this case establishes the fact that the whole amount of indebtedness for which the lien is claimed was fully paid, if an equitable adjustment of the residue of the $20,000 of the insurance money is made; leaving Stow's $5000 free from all claims whatever. And if Stratton & Winthrop had not failed, and had received Stow's share of the money without objection, as the agents named in the policies for that purpose, he could have recovered the whole amount from them in an action for money had and received to his use.

The terms of the policies having provided for the case of the sale or transfer of an interest in the boat subsequent to the commencement of the risk, by creating insurances which would attach upon the interests of whoever it might concern at the time of the loss, and it being the evident intention of the parties to cover the interests of the assignees of those who were the owners at the date of the policies, if any transfers of interest should be made, no assignment of the policy was necessary; and the printed clause requiring notice to the underwriters in case of an assignment of the

policy became inoperative in these cases. It was unquestionably competent for the underwriters to agree to insure whoever might be the owners of the boat at the time a loss thereof should occur ; so as to protect the rights of those who might succeed to the interest of the parties originally insured. Whether such an assignee could bring a suit at law in his own name upon the policy, is a question not necessary to be considered here. In this court the suit is properly brought in the names of the real parties in interest; as the assignee of a chose in action is not permitted to file a bill in the name of a mere nominal party. (*Field* v. *Maghee*, 5 *Paige's Rep.* 539.)

By the terms of these policies the loss, if any occurred, was payable to the agents for the insurance ; but this gave them no greater rights in equity than they would have had as such agents if that clause had not been inserted in the policies. And as the appellants paid Stow's share of the insurance money over to Stratton & Winthrop, after they had failed in business, with full knowledge of his right to the same, and when the appellants had been expressly notified not to pay it to Stratton & Winthrop, they paid it in their own wrong and must look to their indemnity. The appellants must, therefore, pay it to the complainants as the subsequent assignees of the rights of Stow. If the appellants had doubts as to whom the money actually belonged, upon receiving the notice of Stow's claim they should have retained the money in their hands and called upon the different claimants to interplead and settle their rights between themselves.

The claim which the complainants once made to the money, under the attachment which was subsequently abandoned long before they had acquired the interest of Stow under the assignment from him, cannot possibly affect their rights under that assignment. At the time Stow made the assignment to them he had a perfect right to this part of the insurance money ; and being assigned in good faith to secure an antecedent debt of long standing, it was wholly unobjectionable. An assignment of the right of action against an insurance company, upon a policy, after the loss has happened, is not an assignment of the policy of which notice

must be given, within the intent or meaning of the printed clause in the policy. That relates solely to assignments which are made during the continuance of the risk and before the loss has occurred.

The decrees of the vice chancellor are correct and must be affirmed with costs; and the interest upon the insurance monies from the time when they became payable must be computed and inserted in the decrees of affirmance, according to the agreement of the parties upon the argument. In relation to the question of costs in the suits generally, which by the stipulation is also to be disposed of here, I think as between the complainants and the insurance companies the latter should be charged with the costs to which the complainants have been subjected in order to obtain their equitable rights. The decrees, however, must be without prejudice to the rights of the appellants to claim a repayment of those costs, as well as their own costs before the vice chancellor, from Stratton & Winthrop. And they are also to be at liberty to apply to the vice chancellor for such further directions as may be just as against Stratton & Winthrop, upon the equity reserved in the original decrees.

For the purpose of giving to the respondents the damages which they have sustained by these appeals, the interest upon the insurance monies is to be computed up to the time of the decrees of the vice chancellor; and the decrees of affirmance must direct the payment of the amount of principal and interest which was then due together with the interest upon the amount from that time, in addition to the costs in the court below and upon the appeals. As the rights of some of the parties have probably changed since the argument here, the decrees of affirmance are to be entered nunc pro tunc as of that time.