JOSEPH DANIELS and ANDRUS DURAND, Plaintiffs in Error, *vs.* WILLIAM SMITH, Defendant in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

Certain lands were mortgaged by A and B to secure a part of the purchase money, which was to be paid in three separate installments, for which notes were given. The mortgagors afterwards sold the lands to D, subject to the payment of these notes, by a special agreement executed by D. He went into possession of the lands, and leased them to E. When the first note became due the mortgagee foreclosed for that installment, and bid in the land himself. D., the owner, redeemed under this sale, by virtue of *Sec.* 11, *page* 645, *Stat. of Minn.* When the second note fell due, the mortgagee sued the makers therefor, obtained judgment, and levied upon their property, sufficient to satisfy the execution. When the third note became due, he proceeded to foreclose the mortgage by advertisement, claiming in his notice the amount then due upon that installment, but making no reference to what had been done upon the two first installments. In an action to recover pos-session by the purchaser under this last sale,—*Held*, First, That the effect of the redemption by D under the foreclosure for the first installment, was to render null and void the sale and certificate thereof, and to cancel the mortgage and its lien upon the land, so far as that installment was con-cerned; but the redemptioner was substituted as a purchaser in whom the title would become per-fected after the time for redemption had expired. *Second*, That the judgment against the makers, and the levy upon their property, had the effect of cancelling the second installment, and the mort-gaged property then stood as if the makers had paid the first and second notes. *Third*, That it was not necessary to state in the notice of foreclosure for the third installment, what had been done upon the first two;—and that D, by reason of his written assumption of the mortgage, occupied towards the purchaser the relation contemplated by the twelfth section of the Forcible entry and detainer act.

Points and authorities for Plaintiffs in Error:

*First.*—The District Court erred in holding the said mort-gage sale was regular and the notice thereof good.

1. Because, said notice of sale could *not be legally* given after the commencement of proceedings at law to recover any part of the debt secured by said mortgage.  *See Collated Statutes, page* 643, *Sec.* 1 *and* 2.

2. If notice could be legally given as the unpaid (last) installment, yet as a condition upon which the same is allowed, it must show the discontinuance of the suits or return of the execution.

3. Because, said notice failed to set out the several instalments, and the amount due upon the *whole* mortgage.

4. And because, said notice failed to state that the property had been sold previously upon the same mortgage.

5. The notice suppressed the fact that the first note was paid, thereby preventing competition at the sale, enabling Defendant in Error to bid in the property to the prejudice of Plaintiff.   11 *Paige Chy. R.* 620.

*Second.*—The Defendant in Error acquired no title whatever by the alleged purchase in the complaint named, and is therefore not entitled to possession.

1. Because of the sale of the same premises on the day of          under the same power of sale in the mortgage in the complaint named; the equity of the redemption of the mortgagors was foreclosed, and the redemption of the property by a successor in interest would not restore it.   The successor in interest by such redemption acquired the legal estate of the mortgagors, and the equitable estate of the mortgagee and the redemption neither restored the one or the other.  *McCall vs. Lenox,* 9 *Serg. & Rawl,* 304 ; 7 *Watts.* 476 ; 5 *Wharton* 171 ; 15 *Ohio* 469.

2. The sale of the whole premises was a legal " condemnation of the property," and it cannot be again condemned under the same mortgage.

3. A power of sale upon the same premises can only be once used ; when so used it is *spent;* and there is no authority in the mortgage (or the law) to again use it to sell the same parcel.   9 *Serg. & Rawl,* 304 ; *Price vs. Potter,* 7 *Watts.* 476 ; 5 *Wharton* 171 ; 7 *Paige* 249.

4. When the property mortgaged is once sold to satisfy the mortgage debt, the lien of that mortgage is by the *fact of sale*

at once destroyed; and being gone, it is an absurdity to claim that it can be resuscitated by a redemption of the property.

5. The sale of the eighty acres unredeemed is good. If the redemption, as the court below in effect held, so annulled the first sale as to leave the party in the same condition as though no sale had been made, its effect would be to destroy the whole, as it cannot be good in part and bad for the residue. Yet it stands good for that part sold.

*Third.*—A sale under a power can only be made of the same parcel once.

1. If the property is divisible and the mortgage secures instalments, then one or more parcels may be sold to satisfy separate instalments, but the same parcel of land cannot be twice sold under the same power. If the property is not in separate parcels, then the mortgagee must at his peril bid to cover his whole debt, and may lawfully retain the money bid until all instalments are due. 7 *Paige Chy. Rep.* 249.

2. The mortgagee cannot be permitted to sell all the premises mortgaged on each separate instalment, and involve the expense of reselling the same parcel; no such power is expressly given, and no such useless and injurious one will be implied.

And therefore Section 4, page 644, will not bear the construction given by the District Court.

*Fourth.*—If the mortgaged premises had once been subjected to sale in satisfaction of the debt intended to be secured by the mortgage (at instance of mortgagee) the mortgage lien is discharged; and a sale upon a judgment rendered for the mortgage debt satisfies the mortgage.

*Fifth.*—It is wholly immaterial whether Daniels took the property subject to the mortgage or what the contract was between him and the mortgagors. It was by the sale subjected to the mortgage, and Daniels was compelled to redeem or lose his property.

This liability to Folsom and Whitney is personal, and if the Plaintiff is entitled to be subrogated to the rights of Folsom and Whitney, he has thereby only a personal claim; and not a lien upon the property. The propery, (the primary fund) having been exhausted by the sale, the lien is destroyed, leaving a right

of action on the agreement which may, when put in judgment, become by virtue of the docketing thereof, a lien upon said premises, but not otherwise.

*Sixth.*—A party may purchase and acquire the same rights as a stranger. A purchase by the mortgagee vests in him the equity of redemption of the mortgagor, which at once unites with and merges in the legal estate, which upon condition broken had vested in the mortgagee. A successor in interest when redeeming acquires all the title the mortgagee held at the time of redemption. The merger having taken place, the equity of redemption cannot be separated from the legal estate or again created, unless by deed afterwards delivered with the legal consequences thence following. 15 *Ohio* 105 ; 7 *Paige Chy. Rep.* 249.

*Seventh.*—It is claimed that the sale first made was subject to further installments and so purchased in. If so the mortgagee having purchased is bound by his contract of purchase to take the property charged and to pay off such incumbrance. Such is the legal effect of a sale and purchase so made.

Smith having himself purchased the property subject to future installments, and being by his purchase bound to satisfy them, and being so bound and himself holding the installments, they are merged and by operation of law satisfied. 4 *Ohio St. Rep.* 333.

*Eighth.*—Not having insisted when redemption was made that he should be paid the whole amount bid (which under the conditions of the sale, included the future installments), and the court having found (in the former suit between these parties) that the redemption was legally and properly made, Defendant is estopped from claiming otherwise. If the first redemption was not good then the last sale under which Defendant claims title was void.

*Ninth.*—The action of Forcible Detainer cannot be resorted to (after foreclosure) except only in cases when the mortgagor still remains in possesion. It cannot be extended to meet a case not clearly embraced within its express provisions.

*Tenth.*—A sale by advertisement only affects the mortgagor, his heirs and encumbrancers.

A *bona fide* grantor cannot have his title divested without his day in court. *Statute* 651, *Sec.* 12.

*Eleventh.*—The judgment of the District Court and justice should, by the laws of the land applicable to the facts found, have been for Plaintiffs in error and not for Defendant.

SMITH & GILMAN, Counsel for Plaintiffs in Error.

M. E. AMES, Counsel for Defendant in Error.

*By the Court*—FLANDRAU, J. The father-of William Smith, the Plaintiff below, first owned the land in question and sold it with eighty acres besides to Whitney and Folsom for the sum of $10,200, part of the money was paid down, and the balance was to be paid in three installments for which three promissory notes were given by Whitney and Folsom to William Smith, the Plaintiff, which notes were payable, one in six months, one in one year, and one in two years. A mortgage was executed by Whitney & Folsom and their wives on the land in question to said William Smith to secure the said three notes.

After this Whitney and Folsom sold the land to Daniels, the Defendant below, who went into possession. Durand, the other Defendant is a tenant of Daniels. Daniels, by special agreement assumed the incumbrances which were upon the land. The mortgage contained the ordinary powers of sale, and all the papers were properly recorded.

When the first note fell due it was not paid, and Smith foreclosed the mortgage for that installment, and sold the whole land described in the mortgage, and became himself the purchaser.

Afterwards and before the time for redemption expired upon this sale, Daniels redeemed the land under *Section* 11 *on page* 645 *of the Comp. Stats.*

The effect of this redemption by Daniels was simply to render null and void the sale and the certificate thereof made by the Sheriff, and to cancel the mortgage and its lien upon the land for the first installment. The effect is exactly what it would have been, had Daniels paid the first note when it fell

due without any foreclosure or sale. He was not substituted for Smith as a purchaser of the land in whom the title would become perfected after the expiration of the time for redemption had elapsed. He took nothing by his redemption save the removal of the lien upon the land to the extent of the first installment in the mortgage. This result flows from the peculiar wording of our Statute, which provides that upon "such payment being made as aforesaid, the said sale and the certificate granted thereon as aforesaid, shall be null and void."

When the second note fell due, the Plaintiff Smith, instead of foreclosing the mortgage to collect the amount, sued the makers Whitney and Folsom on the note, and obtained judgment against them. He then issued execution upon the judgment and made a levy upon the property of the Defendants. This fact as it is presented in the paper books, has the effect of cancelling the second installment; as the levy taken with the statement of Smith in the notice upon the foreclosure for the last installment, of the amount due at that time upon the mortgage, must be presumed to have been upon sufficient property to satisfy the judgment.

After this levy the mortgage as between Smith and Daniels, or as regards the land in question, stood exactly as if Whitney and Folsom had paid the second installment when it fell due. The lien for that amount was discharged, and all that remained due upon the mortgage was the third and last installment.

I have spoken of the transaction as one mortgage, and of each consecutive payment thereon as of a payment upon such mortgage, in order to simplify the understanding of the matter; but it was in legal effect three separate and distinct mortgages, containing three separate powers of sale, each of which could be foreclosed as it fell due, and a redemption upon a sale under the first or second would simply produce the "like effect as if the sale had been made upon an independent prior mortgage." *Sec. 3, page 644, Comp. Stat.*

When therefore the last note fell due, the position of things was simply this, as between Smith and Daniels, to wit: Daniels owned, and was in possession of a piece of land, against which Smith held a mortgage for the amount of the last note. Everything which had previously transpired was fully termi-

nated, and had ceased to influence in any manner the relations of the parties. The two prior mortgages had performed their offices and been discharged and nothing remained to be done but to foreclose the third. This the Plaintiff proceeded to do in the ordinary way by advertisement. The notice described the whole mortgage—states that it was given to secure the sum of $10,200 payable in three installments, and that there was due upon the last installment the sum of $4,906.95, which I take it is the correct amount, as no question was made about it. The notice said nothing about what had been done upon the two first installments, nor do we think it was necessary that it should. The Statute only requires that the notice should state "the amount claimed to be due thereon, at the date of the notice," that is, on the mortgage being foreclosed. There is not a suspicion advanced of any unfairness in fact or intent, save what may be inferred from the mention of the two first installments, and the omission to state what disposition had been made of them. This, it is claimed, might leave the impression that they remained a lien, and thus deter bidders from attending the sale. The fair inference, however, it seems to me would be, from the contents of the notice, that they had been paid in their regular order of maturity, as is in accordance with the fact.

When, however, a party in a statutory proceeding has done all that the Statute requires of him, his proceedings will not be disturbed upon a mere conjecture.

The sale having been made to the Plaintiff, and he having become entitled to the possession of the land, he could maintain the action selected by him to recover the possession. The Defendant Daniels occupied by reason of his written assumption of the mortgage of Whitney and Folsom, the relation towards Smith, contemplated by the twelfth section of the Forcible Entry and Detainer Act, (*page* 651, *Comp. Stat.*) to give jurisdiction to a justice of the peace, and Durand was the tenant of Daniels. It is unnecessary to decide whether the action can be maintained against a party in possession who is a total stranger to the mortgage.

The proceedings have all been regular and the judgment must be affirmed.

Daniels et al. v. Smith

As the opinion I have written in this case is more in the nature of a statement of the decision we have made, than the reasoning by which we reach it, and as we fully agree with the very able opinion delivered by Mr. Justice Palmer in the court below in this case, I shall embody it herein as expressing our views on the various questions involved.  He says :

" In view of the Statute and facts found and set forth in the decision herewith filed, this case must be considered as if three separate mortgages had been executed by Folsom and Whitney to secure the three notes given in part payment of the stipulated price of the premises in controversy, which mortgages were simultaneous in execution and record, and by a foreclosure of the one given to secure the third and last note, the Plaintiff seeks to recover possession of the said premises. *Sec. 3, Chap. 75 of the Compiled Statutes*, reads as follows : ' In cases of mortgages given to secure the payment of money by installments, each of the installments mentioned in such mortgage after the first, shall be taken and deemed to be a separate and independent mortgage, and such mortgage for each of such instalments may be foreclosed in the same manner and with the like effect, as if such separate mortgage were given for each of such subsequent installments, and a redemption of any such sale by the mortgagor shall have the like effect as if the sale for such installment had been made upon an independent prior mortgage."

The effect of this provision in my judgment is to permit a mortgagee to sell twice or a greater number of times under the power of sale contained in the same mortgage, where the mortgage is given to secure the payment of money due by installments, provided the first sale has been rendered null by a redemption in the manner specified in section eleven of the same chapter.  Strictly the sale is not made twice under the same power, for the Statute has the effect of dividing the one mortgage actually given into two or more, according to the number of installments, each containing the same power of sale upon default, and the same provisions generally, so that this case must be viewed as if one mortgage was given to secure the payment of the note for $1000 due October 23, 1857 ; another to secure the payment of the note for $3,943.44,

due March 23, 1858, and a third to secure the payment of the note for $3,945.45, due March 23, 1859, all executed and recorded at the same time and embracing the same premises. Now on default a foreclosure of the first mortgage is had by advertisement, the whole premises sold and bid in by the Plaintiff (who is mortgagee in all the mortgages) for about the amount of the first note, or the note secured by that mortgage, of course the fee is sold, or what is equivalent, the legal estate of the mortgagee and the equitable estate of the mortgagors— the whole estate—the fee. The purchaser takes this title— this estate—subject however to the right of the mortgagors or their assigns to make redemption and thereby render null the proceeding, the sale by which the estate first passed out of the twofold condition of a legal and equitable estate in two persons, into the single one—the fee simple in the purchaser under said sale.

" It is perhaps not strictly correct to say that the *purchaser* takes the title, inasmuch as the sale is not complete until the expiration of the time allowed for redemption, and a deed has been executed as provided by statute. At or before the expiration of the time allowed for redemption, Daniels, one of the Defendants who had purchased the premises covered by the mortgage or mortgages, subject, however, to them, by express provision in the deed, applies to redeem said premises and does actually redeem them, by paying the amount bid therefor and interest, by which payment the 'sale and the certificate granted thereon became null and void.' What now is the condition of the title, or rather by what title does Daniels hold the premises ? Does his redemption operate as a transfer of the title contingently acquired by the Plaintiff or purchaser under the incomplete sale, or does it rather extinguish such contingent title and restore the original title of Daniels relieved *pro tanto* of the incumbrance ?

" It will be seen by reference to *section twelve, chapter seventy-five* aforesaid, that a sale is not complete until the period for redemption has expired, and no redemption being made, a deed is executed to the purchaser, creditor or assignee of the certificate of sale ; and by *section seventeen* of said chapter it is provided that 'a record of the affidavits and of

the *deed executed on the sale of the premises, shall be sufficient to pass the title thereto.*" These provisions seem to imply that the title to real estate sold under the power given in a mortgage does not fully pass until the execution of a deed after the expiration of one year from the date of sale, and I can find no provision contravening or qualifying them, unless section nineteen of such chapter has such an effect. But this section seems to relate to the evidence of the mortgagees' title rather than to the title itself or the effect of the sale upon the title. The language is, ' The affidavits of the publication and affixing notice of sale, and of the circumstances of such sale shall be evidence of the sale and of the foreclosure of the equity of redemption as herein specified, without any conveyance being executed, in the same manner, and with the like effect as a conveyance executed by a mortgagee upon such sale to a third person.'

" The latter clause of this section is almost incomprehensible. It seems to stand by itself, although from the language there ought to be some preceding provision to which it could properly refer, and which would throw light on its meaning. What effect ' a conveyance executed by a *mortgagee* upon such sale to a third person,' would have, whether as evidence of the sale or of the foreclosure of the equity of redemption, or in any other respect, is not explained.

" It was probably intended to apply to cases in which the mortgagee himself acted as the auctioneer of the mortgaged premises and struck them off to himself as the highest bidder —a rather novel proceeding without express authority of statute and ample provision for securing fair play and good faith.

" In such cases, as the mortgagee could not make a conveyance to himself, it is provided that the title shall be complete without any deed being executed at the end of the time allowed for redemption, but if the mortgagee should act as auctioneer and should strike off the premises to a third person, he could then make the proper conveyance, and the latter clause of section nineteen would perhaps apply. However this may be, there is no occasion to advert to this section in the determination of the question now before the court.

23

"In this case the Sheriff acted as the auctioneer and would have given the proper deed had there been no redemption, in which event the Plaintiff or his assigns by virtue of the contemplated sale would have taken the fee simple in the premises relieved of all incumbrances.

"Before, however, the sale is completed and the new title made absolute, redemption is made and the proceedings become null and void. The effect of this must the be same as if after default, the amount of the first mortgage had been paid by Daniels and the premises so far relieved of incumbrance.

"No new title, nor any title whatever, can pass by a sale which is void *ab initio*, or rendered void by a subsequent act having such legal effect.

"My conclusion on this point is reached mainly from a consideration of the force and effect of our Statute, particularly section three above quoted.

"This section is peculiar to our Statute, and the authorities cited by the Defendants, from New York, do not apply, inasmuch as no such provision is contained in the Statute of that State.

"After redemption then, the premises were owned by Daniels by virtue of his deed from Folsom and Whitney unincumbered by the lien for the notes due in October 23, 1857, and March 23, 1858, respectively.

"January 31, 1859, the second note was merged in a judgment against Folsom and Whitney, and after levy upon the property of the said judgment debtors, the mortgaged premises were so far relieved of the specified lien of the mortgage.

"The third note, however, still remains in the language of section three aforesaid, 'a separate and independent mortgage' upon said premises.

"Afterwards the Plaintiff on the 29th day of March, 1859, proceeded to foreclose, by advertisement, the third and last mortgage. Objection is made to the notice in that it does not specify the previous proceedings, particularly the fact that the second note had been sued, judgment obtained, and execution issued and outstanding at the date of the notice. This objection would be good had the Plaintiff attempted to foreclose for or on account of the judgment or any part of it; but he

does not attempt this.   He seeks only to foreclose for the third installment, and his notice specifies ' the amount then remaining secured by such mortgage," as the Statute requires, *Sec.* 2, *Chap.* 75.   This third note was all that then remained due as an incumbrance on the premises.   The first note having been paid ; the second had been merged in a judgment, and the lien of the mortgage on the property of Daniels removed and transferred to the property of Folsom and Whitney by the lien of the judgment.

"Hence a purchaser under the sale to foreclose this third note or mortgage would take the title (no redemption being had) free and clear of all incumbrance—nothing then rested on the premises in question but the lien of this third note, and a notice of sale which correctly stated the amount of this note and interest must be sufficient.

" This case is very different from what it would have been had the period allowed for redemption from the first sale expired, and the sale become completed by the execution of a deed to the purchaser, whether such purchaser was the Plaintiff or a stranger.   In such case the title would have become perfect, absolute, and the premises would have been relieved from the lien of the last two notes or mortgages, not because the power of sale was exhausted, but because the whole premises were sold—the whole title, legal and equitable disposed of and rendered complete and absolute under the Statute by lapse of time and failure to redeem.   Strictly speaking, no title passes by the sale itself.   The sale, payment of the amount bid, and giving of the certificate provided for by Statute, has about the same effect as an escrow, which is a deed executed and delivered to some third person to keep until some act is done or condition performed, and then is to be delivered to the grantee and to become of full effect.   2 *Black. Com.* 307.

" But until this second delivery the title to the premises remains in the grantor.   This illustration is not as apt as could be wished, but it is as near the mark as any which occurs to me, and sufficiently indicates my idea of the effect of a sale of mortgaged premises in a case like the present before the time allowed for redemption has expired.

" A sale upon execution where no time for redemption is

allowed, or upon decree of court or upon any process which is final, passes the title absolutely, and so far differs from the effect of a sale under the provisions of our Statute relating to foreclosure of mortgages by advertisement.

"Hence in view of the peculiar provisions of our Statute, the authorities cited from New York, Pennsylvania and Ohio are inapplicable. I rest the decision in this case solely upon the force of our Statute, and mainly upon the effect of section three aforesaid.

"The result is that the Plaintiff is entitled to maintain his action and to recover possession of the premises in controversy.

"E. C. PALMER, Judge."

Judgment affirmed.

*Chief Justice Emmett dissents from the foregoing opinion.*