## C. Henry Benton *vs.* Charles E. Nicoll.

## October 24, 1877.

**Incompetent Evidence—Fact Admitted by Pleadings.**—The reception of incompetent evidence to prove a fact admitted by the pleadings, works no prejudice, and cannot be assigned as error.

**Register of Deeds—Index Book Bound in a Volume of the Set of the Record Books to which it Relates.**—By Rev. St. *c.* 8, art. 2, § 5, as amended by Session Laws of 1854, *c.* 21, § 4, the register of deeds was required to keep three separate and distinct sets of record books—one for deeds, one for mortgages, and one for all other instruments; and also a like number and corresponding sets of alphabetical index books. An index book for all other instruments, separately and correctly kept, is not defective and invalid, because it is bound in a volume containing one of the record books to which it relates.

**Terms of Instrument Determine its Character for the Purpose of Record.**—In determining the appropriate set in which to record and index any particular instrument, its character is to be considered as indicated by its terms alone, and not its legal effect taken in connection with some other instrument.

**Mortgage—Deed and Defeasance Recorded as Separate Instruments.**—Under the registry acts in force in 1855, in order to give constructive notice of the legal effect of a deed purporting in terms to be an absolute conveyance, but converted into a mortgage by reason of a separate bond of defeasance, executed at the same time, it was sufficient that the former was duly recorded and indexed as a deed, and the latter as a bond, or other instrument than a deed or mortgage.

**Same—Deed with Bond of Defeasance for Reconveyance upon Payment of a Loan.** A grantee in a deed of conveyance, taken as security for a loan, who at the same time gives to his grantor a bond of defeasance for a reconveyance upon payment of the loan, acquires only the interest of a mortgagee in the premises.

**Quit-Claim from Mortgagee.**—The doctrine of *Hill* v. *Edwards,* 11 Minn. 5, (22,) and subsequent cases, followed as to the effect of a quit-claim deed of mortgaged premises by the mortgagee.

**Release of Mortgage as to Part of Mortgaged Premises—When it Operates as a Release of the Remainder.**—The relinquishment from the lien of a mortgage of a portion of the mortgaged premises, sufficient in value to satisfy the mortgage debt, operates as a release of the remaining portion in the hands of a *bona fide* purchaser acquiring title thereto from the mortgagor, after the giving of the mortgage.

**Right of Entry Cannot be Asserted when Right of Foreclosure is Barred.—**
When right of entry has never been asserted, or exercised, it is too late to assert it, for the first time, after the right of foreclosure has become barred by the statute.

This was an action of ejectment, to recover five acres of land situated in Hennepin county, brought in the district court for said county, and tried by *Vanderburgh*, J., without a jury. For a second cause of defence the defendant set out in his answer, that before and on October 10, 1855, one Gordon Jackins was the owner in fee simple and in possession of the real estate described in plaintiff's complaint; that on said date, for a valuable consideration, Jackins conveyed, by warranty deed, the said real estate, with other land, to one Addison Ely, and that the said deed was recorded, the same day, in the office of the register of deeds for said Hennepin county; that thereafter, on the said tenth day of October, the said Ely executed and delivered to the said Jackins a bond in the sum of $1,500, conditioned that Jackins should pay at maturity his certain promissory note, in the sum of $700, and, in the event of such payment, the said Ely should reconvey the said real estate to the said Jackins, and that he should not, in the meantime, encumber said premises; that said bond was recorded in the office of the register of deeds for Hennepin county, on the same day, "in book A of bonds, as appears therein;" that said Ely duly performed all the conditions of said bond, but that said Jackins had not paid said note of $700; that on June 28, 1858, after the said note had been long due and unpaid, and long after the said Ely and his assigns had taken possession of the said land, one Benjamin F. Baker, for a valuable consideration, and with the knowledge and consent of said Jackins, purchased the said note and bond from the said Ely, and procured from him an assignment of the land described in the bond, including the land mentioned in plaintiff's complaint; that said defendant is now the owner and holder of said note and bond, and that the debt secured thereby is wholly unpaid; that, long prior to

the commencement of this action, the obligor in said bond, at the request and under the direction of said Jackins and his assigns, and before the real estate described in said bond had been conveyed or assigned, released all the real estate mentioned and described in said deed of conveyance, saving and excepting the premises described in plaintiff's complaint, and that said last mentioned premises are the only lands subject to the lien of said bond; that, under the aforesaid facts, default and forfeiture of said Jackins and his assigns, the defendant and his grantors have, ever since said June 28, 1858, and long prior to that date, been in possession of said premises; and that plaintiff had knowledge of all the aforesaid facts long prior to July 16, 1873.

Upon the trial the court received in evidence, on behalf of the plaintiff, under objection and exception, a copy of a duplicate certificate and receipt delivered to Gordon Jackins for eighty acres of land, including the tract in controversy, dated August 7, 1855, to which there was annexed the following certificate of exemplification, to-wit:

DEPARTMENT OF THE INTERIOR, }
GENERAL LAND OFFICE, February 17, 1874. }

I, Willis Drummond, commissioner of the general land office, do hereby certify that the annexed are true and literal exemplifications from the originals on file in this office. In testimony whereof I have hereunto subscribed my name, and caused the seal of this office to be affixed, at the city of Washington, on the day and year above written.

WILLIS DRUMMOND,
Commissioner of the General Land Office.

[United States General Land Office—Seal.]

The plaintiff also put in evidence a patent to the said Gordon Jackins for the said eighty-acre tract, dated April 2, 1857; a deed from Jackins to William Clendennin, dated July 14, 1856, for fifteen acres of the said eighty-acre tract, includ-

ing the land in controversy; a power of attorney from the said Clendennin to the said Jackins, dated November 1, 1856, authorizing the latter to convey any lands to which the former was or might become entitled in the territory of Minnesota; a deed from Jackins, as attorney in fact of the said Clendennin, to William J. Parsons, dated February 11, 1857, for the said five-acre tract; and a deed from the said Parsons to the plaintiff, dated July 16, 1873, for the same premises.

Thereupon the defendant introduced in evidence, from the office of the register of deeds for the said county of Hennepin, book "C" of deeds, page 214, containing the record of a deed from the aforesaid Gordon Jackins to Addison Ely, dated October 10, 1855, for the aforesaid eighty-acre tract, together with the general index of grantors and grantees, wherein the names of the grantor and grantee in this deed were duly indexed; also three several quit-claim deeds for the said eighty-acre tract, dated June 28, 1858, executed by Gordon Jackins, William Clendennin, and Addison Ely, respectively, and delivered to one Benjamin F. Baker; a quit-claim from the said Baker to Henry J. Welles, dated June 29, 1858, for twenty-five acres of land, including the premises in dispute; also a deed from Welles to Cyrus Beede and Richard J. Mendenhall, dated December 24, 1859, for the said five acres; and also sundry other mesne conveyances through which title was deduced to the defendant.

Thereupon the plaintiff, under objection and exception, introduced in evidence a certified copy of the bond executed October 10, 1855, by the aforesaid Addison Ely, and fully described in defendant's answer, as the same appeared of record in the office of the register of deeds in the said county of Hennepin, in book "A" of bonds, and also the index contained in the fore part of the said book "A."

The defendant thereupon proved by the register that the said bond was not indexed anywhere but in the book in which it was recorded; that at the time it was filed for record there was a general index, both of grantors and grantees, kept in

the office; that the deed referred to in the bond was never recorded in any book of mortgages, but was merely recorded in the book of deeds, and indexed as a warranty deed. It appeared, however, upon cross-examination, that the index in book "A" was the only index kept for miscellaneous instruments at that time.

Defendant further produced in evidence a mortgage from William J. Parsons to Franklin Steele, dated July 30, 1857, upon the premises in controversy, and given to secure his note, payable November 17, 1857; an assignment of the same from Steele to R. J. Mendenhall, by his attorney Welles, and a further assignment from Mendenhall to defendant, both dated December 12, 1873; also an assignment from Baker to defendant, dated September 15, 1873, of the Jackins note and Ely bond, purchased as aforesaid by the said Baker.

Upon all the evidence adduced, partly indicated above, the court found, among other things, that on June 28, 1858, when Ely, Jackins and Clendennin quit-claimed to Baker, the latter had notice of said Ely's security upon the eighty-acre tract, and that there was then due to Ely $430, and was the consideration paid for the said deed from Ely; that on the next day Baker quit-claimed to Welles all his interest in twenty-five acres of the said eighty-acre tract, including the five acres in dispute, whereupon Welles contributed $129 as his share of the whole sum paid Ely; that said five-acre tract was then vacant, and that defendant derived his title to the same under and through a chain of title derived from the said Welles; that Jackins had paid on the debt due to Ely the sum of $700, when Baker received the deed from Ely and paid up the balance, and that both Ely surrendered the note and Jackins delivered the bond at that time to Baker; that at the time Baker paid Ely the balance due him, the value of the lands subsequently conveyed, or still remaining in Jackins, was greater than the balance due Ely; that the mortgage from Parsons to Steele, dated July 30, 1857, was never foreclosed, or the note paid; that until after the com-

mencement of this action it was in the hands of Welles, as the agent of Steele; that the said Welles had full authority to dispose of the said mortgage, and did, on December 12, 1873, duly assign the same to the defendant.

The court further found, as conclusions of law, that the deed and defeasance between Jackins and Ely were a mortgage, and should be so construed, both from the evidence and the admissions contained in the answer; that the said mortgage was extinguished by the payments made by Baker, and that in any event the balance of the eighty-acre tract was the primary security for the discharge of that encumbrance; that Parsons acquired the title in fee to the premises in question, subject to the said Ely mortgage, and that said mortgage had been discharged by operation of law; that the title of defendant depended upon that of Baker, which was subordinate to that of Parsons, and that the plaintiff had succeeded to the title of the latter; that the assignments of the said mortgages from Baker and Steele to defendant, made since this action was brought, did not help the title of the defendant, and that all right of action on the same had been barred by the statute of limitations before the said assignments, and that there could be no right of entry where the reciprocal right of redemption was extinguished. The court, therefore, ordered judgment to be entered for the plaintiff, and a motion for a new trial having been denied, the defendant appealed.

*Mead & Thompson,* for appellant, argued that the certificate of the commissioner was defective in that it did not state that the copy to which it was annexed had ever been compared with the original, and was a correct transcript therefrom, (Gen. St. c. 73, § 58; *Kelley* v. *Wallace,* 14 Minn, 236, 243,) and that the deed to Clendennin was prior to the date of the patent, and therefore void. Rev. St. U. S. § 2263; *McCue* v. *Smith,* 9 Minn. 237, 244 (252, 259;) *Jones* v. *Tainter,* 15 Minn. 512, 516. Also that, in order to render the deed from Jackins to Ely and the bond from Ely to Jackins a mortgage, and to charge the defendant with notice of the same, it was

essential that they should have been recorded together, in the record for mortgages, and indexed as such. Rev. St. *c.* 8, art. 2, §§ 4 and 5; Sess. Laws of 1854, *c.* 21; *Dey* v. *Dunham*, 2 John. Ch. 181, 189.

*Benton & Benton*, for respondent.

CORNELL, J. It is distinctly averred in the answer that Gordon Jackins, under whom both parties claim title, was, "before and on the tenth day of October, 1855, the owner in fee simple and in possession of the real estate mentioned and described in plaintiff's complaint." This fully answers the first and second points made by appellant. The reception of the exemplified copy of the duplicate receipt worked no prejudice, even if erroneous, as the fact sought to be proved thereby stood admitted upon the pleadings. It also follows, from this admitted fact of title, that Clendennin became seized of an estate in fee in the lands in question, upon the execution of the deed to him from Jackins; and his power of attorney gave full authority to convey the same.

It is apparent, upon the face of the bond from Ely to Jackins, and from the recitals therein contained, that the deed from the latter to the former was given and received merely as security for a loan of money, and that the bond itself was executed as a part of the same transaction, and intended as a defeasance providing for a reconveyance of the estate upon payment of the loan. In equity, both together constituted a mortgage, and such was their legal effect, not only as between the parties themselves, but as to all persons affected with notice thereof. *Holton* v. *Meighen*, 15 Minn. 69; *Fisk* v. *Stewart, supra,* 97.

Waiving the point urged by respondent, that the answer substantially admits notice, the question is presented whether they were ever so recorded and indexed under the registry acts as to convey to defendant constructive notice of their character and contents. At the time they were recorded three separate sets of record books were kept—one for deeds, one for mortgages, and one for all other instruments; and

three separate and corresponding sets of indexes were also kept and used. The deed from Jackins to Ely was recorded in a book of deeds, and indexed as such. The bond from Ely to Jackins was recorded in a book then kept for the record of all miscellaneous instruments, other than deeds and mortgages, and marked, on the outside, "A of Bonds." It was indexed in an alphabetical index which was then kept and used for indexing all such miscellaneous instruments. This index, though kept separately, was bound together in one volume, with said book of bonds, to the forepart of which it was attached. It is contended by appellant that, to give constructive notice of the operative effect of such deed and bond as a mortgage, they should have been recorded and indexed together, as a mortgage, in the appropriate books kept for that purpose; and, further, that the record of the bond in this case was no notice for any purpose, because it was not properly indexed in a separate book kept for indexing bonds alone. The statutes then in force, so far as they bear upon the question under consideration, are as follows: "The register of deeds of the several counties of this territory shall keep suitable books, and shall record, at large and in full, word for word, any and all instruments left with him for record, keeping separate books of deeds, mortgages, and other instruments. He shall also keep separate books of an alphabetical index, wherein he shall record, under the proper letters of the alphabet, the name of each grantor and grantee in any deed, mortgage or other instrument left with him for record." Rev. St. *c.* 8, art. 2, § 5, as amended by Session Laws of 1854, *c.* 21, § 4. "Every conveyance of real estate not recorded as provided by law shall be void as against subsequent purchasers in good faith, and for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded." Rev. St. *c.* 46, § 24. "When a deed purports to be an absolute conveyance in terms, but is made, or intended to be made, defeasible by force of a deed of defeasance, or other instrument, for that

purpose, the original conveyance shall not be thereby defeated or affected as against any person other than the maker of the defeasance, or his heirs or devisees, or persons having actual notice thereof, unless the instrument of defeasance shall have been recorded in the registry of deeds of the county where the lands lie." Section 27, same chapter.

The meaning of the first above quoted section is plain and obvious. By it the register was required to keep three separate and distinct sets of record books—one for recording deeds, one for mortgages, and another for all other instruments; and also three separate and corresponding sets of alphabetical index books. He was not required to keep a separate index for each class of instruments embraced under the last head. One was sufficient. It was to be kept separate and distinct from everything else, but this did not require it to be kept in a separate volume. It might, as in the case at bar, be bound in the same volume with one of the books of miscellaneous records to which it referred. The object of the statute, both in the classification it required and the indexes it directed to be kept, was to facilitate searches. This was fully accomplished by preserving a separate classification and indexing in the manner indicated by the statute; but whether the index was bound in a separate volume or together with one of the record books to which it referred, was wholly immaterial as affecting this result.

In determining the character of the instrument, for the purpose of recording it, the register was to be governed by what it purported to be upon its face; if a deed it was to be recorded and indexed as such, and if neither a deed nor mortgage in terms, it was to be treated as "another instrument," and recorded among the miscellaneous records, and indexed accordingly.

The deed from Jackins to Ely was an absolute conveyance in terms, and was properly recorded as such. The bond back, in and of itself considered, was neither a deed nor mortgage, either in terms or effect, and hence it was properly treated

as a bond for the purpose of recording it. What legal effect the one had upon the other was a judicial question the register was not called upon to determine. That depended upon the instruments themselves, and the circumstances under which they were executed, and not upon the record of them. In searching the title in this case for encumbrances, it was as easy to consult the index for miscellaneous records as that kept for mortgages, and no prudent man would have omitted either. If defendant had done both he would have learned all the facts affecting such title as fully as though both instruments had been recorded together on the same page.

Morever the last above quoted section clearly recognizes by implication the propriety of recording as a deed an instrument which is an absolute conveyance in terms, although the same is made or intended to be made defeasible by force of a deed of defeasance or other instrument for that purpose, by expressly declaring that "the original conveyance shall not be thereby defeated or affected as against any persons without actual notice of the defeasance, unless the latter is recorded in the registry of deeds of the county where the lands lie." This repels the inference that the statute contemplated the recording of such a conveyance or deed in a book kept for mortgages, for such a record would furnish no constructive notice whatever to any one of its existence and character as an absolute and indefeasible conveyance. This section does not specify in what set of books, kept by the register, the instrument of defeasance is to be recorded. That is left to be determined, then, by the section hereinbefore considered.

The case of *Dey* v. *Dunham*, 2 John. Ch. 188, cited by appellant, is not in point. The views there expressed by Chancellor Kent, which seem to have been followed by the courts of that state, (*White* v. *Moore*, 1 Paige, 551; *James* v. *Morey*, 2 Cow. 316,) although the decision itself was reversed in *Dunham* v. *Dey*, 15 John. 555, related to a statute concerning the registry of mortgages alone. It provided that no mortgage nor any deed, conveyance or writing, in the

nature of a mortgage, should defeat or prejudice the title or interest of any *bona fide* purchaser, unless the same was duly registered in the manner therein provided; and that if there was a separate written defeasance, that should also be recorded to protect the instrument as a mortgage. The only claim set up in that case, under the deed, was that of a mortgage. There was no written defeasance in fact or of record, prior to the time when the *bona fide* purchaser's right and title accrued; and it was in reference to this state of facts that the chancellor held that both the deed and defeasance should have been recorded together as a mortgage, to protect it as such. It was not intimated that it could have any operative effect as a deed under any circumstances. The registry statutes under consideration in this case treat of conveyances in general, and are clearly different in their provisions.

It follows from these views that the defendant herein was affected with constructive notice of the real nature of the transaction between Jackins and Ely, and the character of the deed from the former to the latter; and in respect to his claim of title under the Ely deed, he stands in no different or better position than that of his grantor, Baker.

Upon the facts found, Ely's only interest in the property at the time of his quit-claim to Baker was that of a mortgagee after condition broken, who had neither foreclosed nor made any entry. He had then no conveyable interest or estate in the premises, and his quit-claim to Baker passed no title. *Hill* v. *Edwards*, 11 Minn. 10, (29;) *Everest* v. *Ferris*, 16 Minn. 31.

The quit-claim deed from Clendennin to Baker passed no title or estate in the premises in question, because of his prior conveyance to Parsons.

If the transaction between Baker and Ely operated as a transfer or assignment of the mortgage held by the latter, instead of a payment and satisfaction of the mortgage debt, it is clear that Baker's subsequent conveyance of that portion of the mortgaged premises not embraced in the deed to Par-

sons had the effect of releasing the premises in question from the lien of the mortgage, as the portion so conveyed had become the primary security for the mortgage debt, and was of sufficient value to satisfy it. *Johnson* v. *Williams*, 4 Minn. 183, (260.)

It is equally clear, as well upon the evidence as the findings, that the Parsons' mortgage was never in fact assigned to Mendenhall, the defendant's grantor, nor intended to be; that Steele, the original mortgagee, remained the legal owner of the mortgage, and of the debt thereby secured, till after the commencement of this action, and long after the statute of limitations had run against it. Neither defendant nor any of his grantors had ever entered into or claimed to hold possession under this mortgage, but held adversely thereto. Under these circumstances he acquired no rights under the assignment from Steele, as the right of foreclosure and of entry had become barred by the statute. *Archambau* v. *Green*, 21 Minn. 520.

Order affirmed.