GEORGE A. BASSERMAN *vs.* THE SOCIETY OF TRINITY CHURCH.

A lease of certain land granted to the lessees " the privilege of using the well and necessary on the lot next south, so long as they remain." Held, that, as it did not appear that the use of these structures was indispensable to the convenient use of the letten premises, there was no covenant by necessary implication that they should remain ; that the lessees had merely the right to their use while they remained, and the lessors had the right to determine how long they should remain, and might remove them at their pleasure.

PETITION for an injunction ; brought to the Court of Common Pleas, and reserved for advice on demurrer to the bill. The case is sufficiently stated in the opinion.

*Baldwin,* for the petitioner.

*J. S. Beach* and *H. B. Harrison*, for the respondents.

FOSTER, J.   The petitioner in this case is a tenant of · the respondents, in possession of a lot of land belonging to them lying in the city of New Haven, the situation of which lot is particularly described in the petitioner's bill.   The lease under which the petitioner holds was made and executed in 1847, Messrs. David and Allen A. Smith being the original lessees.   On the 4th of February, 1861, they assigned to the petitioner all their rights under said lease, and he was accepted by the respondents as lessee from that date ; both the parties thereafter to be subject to the stipulations of said lease.   The original lease, dated May 1st, 1847, was to continue for seven years, and it contained a provision that it should be renewed eight several times, for seven years each time ; the annual rent for each of said periods to be adjusted and determined in the manner provided in said instrument. On the 1st of May, 1861, the annual rent for the then next period of seven years was fixed at $200 ; and on the 1st of May, 1868, for the like period of seven years then to come it was fixed annually at $400.

The respondents were the owners of another lot adjacent to, and southerly from, the aforesaid lot leased to the petitioner, which other lot they leased to Sally Foster on the 24th of February, 1843, for four years from the first of May then next, with a provision that said lease should be renewed three several times, each term for a period of seven years ; the last to expire, and the lease to terminate, on the 1st of May, 1868.   Upon this lot there was a well and a necessary ; and the only question between the parties now is as to the duration of the petitioner's right to the use of this well and necessary.

The clause in the petitioner's lease originally given to the Messrs. Smith referring to this subject is as follows : " also the privilege of using the well and necessary on the lot next south so long as they remain, the expense of keeping the same in repair to be borne by the occupants of the lots using the same."   The lease of the respondents to Sally Foster above mentioned contains this clause : " reserving to

the tenants of the lessors, occupying the corner lot north (the petitioner's lot), and the lot on school alley next west, the privilege of free access to and use of the well and necessary on said leased premises."

In December, 1871, the respondents, being in possession of the lot leased to Sally Foster, her lease having expired, took down the necessary on the same, filled up the vault, and also filled up the well ; intending, it was stated in the argument, to erect a building on the premises which would cover the lot. The petitioner has rebuilt the necessary, and proposes to open said well, in order that he may continue to use the same. By this bill he seeks to enjoin the respondents against interfering with the exercise and enjoyment by him of these rights. The respondents demur to the petitioner's bill.

The question is within exceedingly narrow limits. What is the meaning of the clause in the petitioner's lease granting the privilege or easement in the adjacent lot ? The petitioner insists that this privilege to use the well and necessary continues so long as they shall be kept in serviceable condition by the lessees of the adjacent lots, to whom the right to use has been granted, unless their use is prohibited by law, or terminated by natural causes. This the respondents deny, insisting that the right to use is only so long as they remain, and that to them belongs the right of determining that question.

Aside from the leases given of these lots, the right of the respondents, as owners, to do the acts complained of, removing the necessary and filling up the well, is unquestionable. Such rights are incidents of ownership. During the existence of the lease to Sally Foster this right was suspended. That lease expired by limitation May 1st, 1868, and so far as that instrument had suspended or abridged the owners' rights those rights then reverted to the respondents. The lease of the petitioner is all that now diminishes the full rights of the respondents as owners of the structures in question, and the right of the petitioner is derived solely from the same source. He has the right to use while they remain ; but there is no

stipulation that they shall remain, nor is there any necessary implication that they shall remain, for the letten premises can be reasonably enjoyed without them. The averment in the bill, no doubt made as strong as the truth would warrant, only is, that they are "necessary to the convenient use of his said letten lot of land." They should be indispensable in order to make a grant by implication. The words employed are too clear to require, or even to admit, of construction; too simple to permit any illustration. The respondents have the same rights over these structures, the same right to determine how long they shall remain, as they would have if this lease had never been made. That gives the lessee the right to use them while they remain, and that is the extent of the petitioner's right.

We think this bill is insufficient, and that the demurrer is well taken. We advise the Court of Common Pleas to render judgment accordingly.

In this opinion the other judges concurred; except SEY-MOUR, J., who was absent.