Allen, J.
The defendants claim exemption from the payment of rent, and the performance of the other covenants of their lease, under the provisions of chapter 345 of the Laws of 1860, which, as its title indicates, was designed to declaré the mutual rights and liabilities of owners and lessees, and of lessors and occupants of buildings upon a destruction thereof, or their becoming untenantable, in cases in which express provision should not be made by written agreement or covenant.
*285 It is a remedial statute in this, that it relieves the tenant from the rigorous rule of the common law, which holds him to the payment of rent notwithstanding the building rented may be destroyed or become untenantable, and permits him, upon the happening of such event, to quit and surrender possession of the demised premises. It gives to the tenant the option, when the demised premises are no longer capable of beneficial enjoyment, to terminate and annul the lease, and by a surrender of the premises leave the parties, in respect to the future use and occupation of the same, as if no lease had ever been made. This right of the tenant, by the terms of the act, is dependent upon the condition that the destruction of or injury to the rented building is without fault or neglect on his part. If the act or neglect of the tenant causes or contributes to the injury, he is not entitled to the benefit of the act, but is held to> the terms of his lease as at common law. Although the defendants and their clerk were ignorant of and unable to surmise the cause of the settling of the floors, the falling away of the staircases, the crumbling of the walls and the general dilapidation of the building, the .fact is placed beyond dispute, by more intelligent witnesses, that the entire injury resulted from the excavations on the adjoining lot, preparatory to the erection of a building thereon, and the want of the proper shoring up and support of the building. This is proved by the builder, an expert called by the defendants, and was not controverted. He testified that if the building had been properly shored up and secured, there would have been no settling, and that, as a builder, he would have had no difficulty in doing that. That the injury could have been prevented was not disputed.
The right of the owner of the adjacent lot to excavate to any extent he desired was unquestionable, and, at common law, he would have been under no obligations to regard the safety or care for the support of buildings and structures upon adjoining lots. In the cities of Hew York and Brooklyn, however, this common-law right is modified by chapter *286 6 of the Laws of 1855, by which it is provided that whenever excavations in either of those cities shall be intended to be carried to the depth of more than ten feet below the curb, and there shall be any party or other wall, wholly or partly on adjoining land and standing upon or near the boundary lines of such lot, the person causing such excavation to be made, if afforded the necessary license to enter on the adjoining land, and not otherwise, shall at all times until the completion of such excavations, at his own expense, preserve such wall from injury, and so support the same by a proper foundation that it shall remain as stable as before such excavations were commenced The obligation as well as the right of the party making the excavation to enter upon the premises occupied by the defendants, to protect the building against harm and injury from the work in progress, depended upon the license of the occupants. If license and permission was withholden, the parties stood upon their common-law rights, and the owner of the adjacent lot was absolved from all obligation to protect the walls or foundation of the defendant’s building; and without the license and permission of the defendants such adjacent proprietor could not lawfully have entered upon, the premises for the purpose of preserving the walls and supporting the same, and would have been a trespasser had he done so.
The first complaint of any damage to or settling of the building, so far as appears, was by letter, from the defendants to the plaintiffs, under date of August 24, 1869, in which they say: “ This morning, from some cause unknown to us, the front, or store floor, of 475 Broadway gave way and settled down, and the premises by reason thereof became untenantable and unsafe for us to remain; ” and they gave notice that they would be compelled speedily to vacate the premises and surrender the possession thereof, etc.
As early as June preceding, and not long after the commencement of the improvement of the adjacent lot, the defendants were applied to for permission to Mr. Bhinelander, *287 who was making the excavation, to come in and shore up, and thus protect and preserve the buildings, and permission was refused. Charles J. Oppenheim, one of the defendants, was asked the question, “ Do you remember an interview with Hr. Johnson, in June, when he came and asked you to permit Hr. Bhinelander’s people to come in and shore up the buildings, and you refused? ” and the answer was “yes, sir.” On a re-examination, he sought to qualify this answer, by saying, “ I said I had no consent to withhold, and none to give; that I stood upon the rights of my lease; ” and farther on he testified, that he responded to the request, “ I have no consent to withhold and none to give;” and that he always spoke those words. He testified that he made the same response to the plaintiff’s application and offer, on the 28th of August, to enter upon the premises and shore the building up, and put it in proper repair and safe condition. The first answer of the witness was technically accurate. He did refuse the permission asked, and, in the language of the act, the party making the excavation was not “afforded the necessary license to enter in ” the demised premises for the purpose of preserving the building from injury, and was, therefore, absolved from all obligation to protect the building, and from all responsibility for damages to the building resulting from his excavations. The refusal of the license in June was not put upon the ground that the work proposed to be done would interfere with the business of the defendants or damage their goods. It was in August, after the serious injury to the building necessitating extensive repairs, that this position was taken. If it should be assumed that the shoring up and supporting the building by a proper foundation would have slightly inconvenienced the defendants, and temporarily interfered with their business, that would not have justified the refusal of the license asked. It is a slight inconvenience to which the occupants of buildings in the city of Hew York and Brooklyn may submit, at their election, rather than subject their property to greater evils and themselves to more serious loss. It is optional with the occupant to forbid an entry for *288 the purpose of protecting the building, but if he does so, and harm and loss ensue, it is the result of his voluntary action, and he must abide the consequences. The maxim volenti non fit mjiuria applies in all its force not only in favor of the party making the excavation, and by whose acts, in withdrawing the lateral supports of the building, the injury is more directly caused, but in behalf of all directly or indirectly liable to suffer .injury from the same cause. The defendants— having the means of protecting themselves from loss, and the building occupied by them from harm, and refusing to avail themselves of such means; and having the right to demand, and the offer of adequate protection to their building, and refusing to accept the offer, or permit the building to be supported in the proper and usual manner—must be held to have consented to the act which occasioned the loss, and to have assumed the risk of injury from the excavation. Had the lease contained a covenant on the part of the landlord to rebuild or repair, and the walls had been suffered to fall, or the building been destroyed by reason of the refusal of the tenants to permit the adjacent landowner to shore up and protect the walls, the maxim would clearly have applied, and the law would not have held the landlord to his covenant. It was a willful fault of the defendants to refuse permission to the party, whose duty it was, with their permission, to preserve the building and keep it as stable as before such excavations were commenced, to enter upon the premises for that purpose. As one who has consented to an act cannot maintain an action for any loss sustained by him, so no one can avoid an obligation or relieve himself from a duty to another by the act of a third party to which he has consented.
The averment of the answer'is that the- plaintiffs did not provide the proper or requisite precaution against injury from the improvements upon the adjoining property, and yet the defendants themselves prevented the use of all means in that direction, either by the- plaintiffs or those who owed the duty as well to the plaintiffs as to the defendants. *289 The refusal of the defendants to permit the proper support • of the building directly contributed to the injury, so that the building did not become untenantable without their fault or neglect. They were not, therefore, excused from the payment of rent by reason of the injury thus caused by their own acts.
It is also contended by the plaintiffs that, whether the injury to the building was with or without the fault or neglect of the defendants, they are not entitled to the benefits of the act of 1860, for the reason that they did not quit and surrender the possession of the demised premises. It is in evidence that a material portion of the premises continued to be occupied by a tenant of the defendants for many months after the alleged surrender, and until removed by summary proceedings at the instance of the defendants as his landlords and lessors. Indeed, the defendants assumed to and did exercise dominion over the premises, by reletting a portion thereof to their former tenant nearly four months after they claim to have yielded the possession to the plaintiffs. The answer to this by the defendants is twofold. 1. That the act does not require a surrender of the possession as a condition of the release of the tenant from the obligation to pay rent; and, 2. That the plaintiffs waived the performance of such condition by the position taken and reasons assigned for a refusal to accept the surrender proffered..
The act should receive that interpretation: which will best and most effectually carry out the intent of the legislature, as indicated by its terms; and in construing it, so far as there is any ambiguity in its frame-work, respect should be had to the law as it existed prior to its enactment,.and the evils intended to be remedied. Such construction, should be given' as will redress the evils and advance the remedies which were in the minds of the legislators in the enactment of the law. At common law, in the absence of an express provision in the lease or other contract for the letting of premises, in case of a destruction of the demised buildings or their becoming untenantable without fault of the landlord, the latter is not bound to rebuild or restore; the premises to a condition fit for *290 occupation, and the tenant is hoi den to the payment of the agreed rent. This was deemed a hardship, and the act was intended so to vary the mutual rights and liabilities of landlord and tenant as to make them equitable and just. The act therefore provides that, upon the destruction or injury of leasehold buildings so that the same are untenantable, the tenant shall not be liable or bound to pay rent, and that he may thereupon quit and surrender the possession of the premises. The tenancy is not made absolutely to cease, except at the option of the tenant. He is relieved from his obligation, if he chooses to avail himself of the provisions of the act, or he may perform the covenants of his lease and retain the benefit of it; but he cannot have the benefit of the law, and, at the same time, repudiate its obligations. If he elects absolution from his obligations, the act, by necessary implication, imposes as a condition the surrender of the premises. The relief from the obligation to pay rent, and the provision to surrender the premises, are so connected in the act as to make together a single and completed act by which the contract of hiring and the term created by the lease are determined, and the landlord, deprived of his rent without fault on his part, is restored to the possession of the demised premises. The act might have been more clearly expressed; but the provision for surrender is without meaning, unless it qualifies the provision for a discharge of the obligation of the tenant to pay rent.
To permit the tenant to withhold the possession of the premises from the landlord, and retain the same discharged from all rent, would be to transfer the hardship which before was upon the tenant to the landlord, and another act would be necessary to readjust the equities. Upon the construction claimed by the defendants, a lessee of a building under a lease for a term of years, which should be destroyed during the first month of the term, would be discharged from his obligation to pay rent, and at the same time could deprive the landlord of his property, and all benefit of it or opportunity to improve it, for the entire term.
*291 The act terminates the relation at the option of the lessee, and imposes no other obligation upon the landlord than to resume possession of his premises. It does not compel him to rebuild upon pain of forfeiting the use of the premises during the unexpired term, be the same shorter or longer. The surrender of the premises is inseparably connected with the release of the obligation to pay rent, and necessary to give the lessee the benefit of the relief provided for by the act.
The objection, that the plaintiffs, by not insisting at the time of the attempted surrender that the same was not complete and perfect, and refusing to accept any surrender of the premises, denying the right of the defendants to make the same, waived the right to insist upon it at any time thereafter, is not tenable. The case is not within the principle of those referred to and relied upon by the counsel for the defendants.
The principle is, that when some formal act or acts are to •be performed by a party as a condition precedent to some right, or to perfect a right of action or property, and the act as performed is defective or imperfect, and the adverse party, whose right it is to object and insist upon a more perfect compliance with the condition, takes no objection to the manner of its performance, but accepting the performance as perfect places his objection to the claim and right asserted upon another distinct and independent ground, he is held to have waived all objection to the forma] or technical defects. Or when a single objection to the performance is taken, and the party is silent as to all others, they are deemed to" be waived. The rule rests upon the ground that the party by his silence has misled his adversary, and not having spoken when he ought, shall not be permitted to speak when he would. The principle has its most frequent application in actions upon policies of insurance, where there have been some defects in the preliminary proof of loss or of interest, which have not been objected to, but the claim has been resisted on other grounds. (Rogers v. Traders’ Ins. Co., 6 Paige, 583; McMasters v. Westchester Ins. Co., 25 *292 Wend., 319.) Whether the plaintiffs knew of the continued occupation of the premises at the time of the offer to surrender does not appear; but if they did, the assertion of the claim that the defendants had no right to make, the surrender, did not tend to mislead the latter, or absolve them from the obligation to do all they claimed to do, and all that the law required of them as a condition of their discharge. They undertook to bring themselves within the act of 1860, to be released from the covenants of their lease, and it was their province to see that the act and every substantial requirement were complied with.
The letter of September thirtieth, of the defendants to the plaintiffs at Norwich, Connecticut, declares that they, had that day vacated the premises, and had sent the key to them by Hamden’s Express, clearly implying that the premises were then vacant and unoccupied. They did not then assert,, as they allege in their answer, that they had vacated the premises, so far as they were concerned. The plaintiffs waived nothing by not objecting upon a ground of which they may have been ignorant, or, if not, of which the defendants had more perfect knowledge than they had, and which was fatal to an effectual surrender of the premises. There was no surrender of the premises in fact, and the plaintiffs did not estop themselves from so alleging by denying the right to make a surrender.
The defendants took an exception to the exclusion of evidence offered in different forms touching statements and expressions of opinions by the plaintiffs-upon the execution of the lease, that no change would be made during the term in the occupation of the adjoining lot, which would interfere with the enjoyment of the demised premises in their then condition, or with the light they then had, and tending, as is claimed, to show that the lease was accepted by the defendants upon the expectation and condition that no change would be made upon the adjoining lot which would intercept the light of the demised building, or otherwise interfere with its occupation and use. If the evidence offered tended, to *293 prove, and" would in any view have established the fact, that by the understanding and arrangement of the parties the lease was to be determined, and the term cease upon the making any improvement upon the adjoining lot which would intercept the light, or otherwise interfere with the reasonable enjoyment of the premises, it was clearly inadmissible within well established rules of evidence. All prior and cotemporaneous negotiations were merged in the written agreement of the parties, and parol evidence could not be received of such negotiations to vary, contradict or alter the terms of the written agreements. To engraft a new condition upon the lease by which the term was to end upon any contingency before the expiration of the time limited, would have been to change and vary the terms of the written agreement in an essential particular. The case is not within the rule which allows a collateral agreement, made prior to or cotemporaneous with a written agreement, but not inconsistent with or affecting its terms, to be given in evidence. Such was the case of Erskine v. Adrian (L. R., 8; Ch. App., 756), cited by the counsel for the appellants. The agreement by the steward of the landlord with the tenant, that the game on the demised premises should be reduced, was independent of and strictly collateral to the contract of letting. Morgan v. Griffith (L. R., 6. Exch., 70); was a similar case, and because the agreement to destoy the game was collateral to the lease, the tenant was enabled to maintain an action for a breach of it. The mere building upon or other improvement of the adjoining lot, by which the premises of the defendants were rendered less commodious of occupation or less suitable to the uses of the defendants, did not affect the right of the plaintiffs to their rent, or authorize the defendants to terminate the lease and abandon the premises. (Palmer v. Wetmore, 2 Sand., 316; Parker v. Foote, 19 Wend, 309 ; Myers v. Gemmel, 10 Barb., 537; Basserman v. Society of Trinity Church, 39 Conn., 137.)
The eviction of the defendants from the premises, and the recovery of the possession thereof by the plaintiffs by sum *294 inary proceedings for the non-payment of rent, did not dischage the defendants or relieve them from the payment of rent already accrued and due, or the payment of the taxes and assessments charged upon the premises prior to such proceedings. Their liability for defaults before then incurred in the performance of their covenants continued; and the lease was only annulled as to rights and liabilities in the future. The lease was not abrogated m toto, but was only avoided as to the future, and actions for breaches of covenant already incurred were maintainable. (Sperry v. Miller, 16 N. Y., 407; Hinsdale v. White, 6 Hill, 507; McKeon v. Whitney, 3 Den., 452.)
The judgment should be affirmed.
All concur.
Judgment affirmed.